121 Cal.Rptr.2d 780 (2000)
99 Cal.App.4th 1202
VILLA DE LAS PALMAS HOMOWNERS ASSOCIATION, Plaintiff and Respondent,
v.
Paula TERIFAJ, as Trustee, etc., Defendant and Appellant.
No. E029449.
Court of Appeal, Fourth District, Division Two.
June 28, 2002.
Review Granted September 25, 2002.
Law Offices of Russell P. Nowell and Russell P. Nowell, Brea, for Defendant and Appellant.
*781 Fiore, Racobs & Powers and Margaret G. Wangler, Palm Desert, for Plaintiff and Respondent.

OPINION
McKINSTER, Acting P.J.
Villa De Las Palmas Homeowners Association (the association) filed suit against Paula Terifaj (Terifaj) to enjoin her from keeping her dog at the Villa De Las Palmas community apartment project (the project) where she owns a unit. The original complaint was based on a no-pets rule adopted by the association but not included in the project's recorded declaration of covenants, conditions, and restrictions (CC & R's).
The trial court subsequently denied the association's motion for a preliminary injunction, indicating in part that it was not convinced the association would prevail on the merits. In response, the association adopted and recorded an amended declaration that included a restriction prohibiting all pets, a provision declaring any violation to be a nuisance, and a provision authorizing injunctive relief. The association then amended its complaint to refer to the provisions of the amended declaration. The trial court ultimately found the amended declaration to be enforceable, issued the requested injunction, and awarded the association attorney fees.
On appeal, Terifaj argues that: (1) the pet restriction contained in the amended declaration is not enforceable because (a) it was adopted and recorded after she purchased her unit and (b) it is unreasonable; (2) the association was not entitled to attorney fees for the entire action because it was not the prevailing party on the original complaint which was based on the unenforceable no-pets rule; and (3) the association cannot simply declare a violation of the restrictions to be a nuisance, and there was no evidence that her dog actually was a nuisance.
We affirm the judgment in its entirety, finding that the restrictions contained in the amended declaration constitute enforceable equitable servitudes that are presumptively reasonable under Civil Code section 1354,[1] and that the pet restriction at issue in this case is not unreasonable pursuant to Nahrstedt v. Lakeside Village Condominium Assn. (1994) 8 Cal.4th 361, 33 Cal.Rptr.2d 63, 878 P.2d 1275 (Nahrstedt). We also conclude that the previous unrecorded no-pets rule was similarly enforceable pursuant to section 1354 and Nahrstedt, because the original recorded declaration specifically required unit owners to comply with the rules adopted by the association. As such, the award of attorney fees for the entire action was proper. Lastly, we conclude that the nuisance issue is moot because the equitable remedies of declaratory and injunctive relief were independently authorized by the court's conclusion that the pet restriction was an enforceable equitable servitude under section 1354.

STATEMENT OF FACTS
The project was formed in 1962 when the apartment units were conveyed to the original grantees by recorded grant deeds that contained various CC & R's. In relevant part, the original grant deeds required the grantees to execute a management agreement and "covenant and agree to observe, perform and abide by any and all lawful [bylaws], rules, regulations and conditions with respect to the use and occupancy of said premises which may from time to time be adopted or prescribed by the Board of Governors constituted in said Management Agreement." *782 The grant deeds further provided that any violation would result in the forfeiture of the property, and permit other unit owners to sue for injunctive relief or damages. Lastly, the grant deeds specified that "[t]he benefits and obligations of this deed shall inure to and be binding upon the heirs, executors, administrators, successors and assigns of the respective parties hereto." The association subsequently adopted rules and regulations that provided in part that "[p]ets of any kind are forbidden to be kept in the apartment building or on the grounds at any time." These rules were never recorded.
In 1995, Terifaj purchased a unit in the project. Although Terifaj had actual knowledge of the no-pets rule prior to purchasing her unit, she insisted on bringing her dog to the property. At the association meeting in 1996, Terifaj attempted to persuade the members to repeal the no-pets rule, but her proposal was rejected. The association repeatedly fined Terifaj for violating the no-pets rule, but she simply paid the fines and continued to bring her dog. At trial, Terifaj admitted that she continues to bring her dog to the property, and that she had a guest who stayed at the property with his two dogs.
The association eventually filed suit, alleging causes of action for injunctive relief, declaratory relief, and nuisance, and requesting attorney fees and costs. The association moved for a preliminary injunction, which was denied in part because the trial court was not convinced that the association would prevail on the merits.
The association subsequently adopted and recorded an amended declaration of CC & R's. The amended declaration provided in pertinent part that "[n]o pets or animals of any kind, including without limitation, dogs, cats, birds, livestock, reptiles or poultry, may be kept or permitted in any Apartment or anywhere on the Property." It also provided that violations could be enjoined and declared them to be nuisances.
The association filed an amended complaint based on the provisions of the amended declaration, alleging the same three causes of action and requesting the same relief. The trial court found in favor of the association on all three causes of action, enjoining any further violations of the pet restriction, declaring that the amended declaration was enforceable, finding that the violation was a nuisance, and awarding the association $15,000 in attorney fees.

DISCUSSION

1. Pet Restriction in Amended Declaration

a. Section 135k and Nahrstedt

This case should be exceedingly simple. The property at issue constitutes a common interest development (CID) subject to the Davis-Stirling Common Interest Development Act (the Davis-Stirling Act). (§ 1350 et seq.) Under the Davis-Stirling Act, a CID is created whenever a separate interest coupled with an interest in the CID is conveyed subject to a recorded declaration identifying the association and listing the applicable use restrictions, among other things. (§§ 1352, 1353.) Section 1354 of the Davis-Stirling Act provides that the restrictions in the declaration "shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all owners of separate interests in the development." (§ 1354, subd. (a).) Therefore, because the pet restriction at issue in this case was included in the amended declaration, it constitutes an enforceable equitable servitude under section 1354, "unless unreasonable."
*783 The Supreme Court has already determined that a complete ban on pets is not "unreasonable" within the meaning of section 1354. In Nahrstedt, the Supreme Court addressed the validity of a restriction contained in an original recorded declaration that prohibited all animals, except "domestic fish and birds." (Nahrstedt, supra, 8 Cal.4th at p. 369, fn. 3, 33 Cal. Rptr.2d 63, 878 P.2d 1275.) Nahrstedt held that the use of the double negative "unless unreasonable" in section 1354 created a presumption of reasonableness. (Id. at p. 380, 33 Cal.Rptr.2d 63, 878 P.2d 1275.) Adopting the law that generally governs the enforcement of equitable servitudes, Nahrstedt concluded that the section 1354 presumption of reasonableness could only be overcome if the party challenging the restriction could prove that the restriction: (1) "violates public policy"; (2) "bears no [reasonable] relationship to the protection, preservation, operation or purpose of the affected land"; or (3) "otherwise imposes burdens on the affected land that are so disproportionate to the restriction's beneficial effects that the restriction should not be enforced." (Id. at pp. 380-382, 33 Cal. Rptr.2d 63, 878 P.2d 1275.) Applying that standard, Nahrstedt held that a complete ban on animals was not unreasonable and was therefore enforceable under section 1354. (Id, at p. 386, 33 Cal.Rptr.2d 63, 878 P.2d 1275.)
Nahrstedt controls this case. Like the restriction at issue in Nahrstedt, the pet restriction in this case broadly prohibits the keeping of any animals, including dogs. Although the pet restriction in this case fails to contain an exception for "domestic fish and birds" (Nahrstedt, supra, 8 Cal.4th at p. 369, fn. 3, 33 Cal.Rptr.2d 63, 878 P.2d 1275), that distinction is hardly relevant, given that this case involves a dog, not a fish. Thus, as in Nahrstedt, the pet restriction contained in the amended declaration appears to be an enforceable equitable servitude under section 1354.

b. Enforcing Post-Purchase Amendments

Although section 1354 and Nahrstedt appear to conclusively resolve this case, nothing in the realm of property law is that simple. Terifaj counters that enforcement of declarations amended after the purchase of a unit would turn California property law "on its head" by undermining the traditional requirement that deed restrictions be agreed to at the time of purchase. In other words, Terifaj claims that because the pet restriction was recorded after she purchased her property, she cannot be expect to have agreed to it and is therefore not bound by it.[2]
Reasonable people may share Terifaj's inverted viewpoint, but the Legislature does not. As noted above, section 1354, subdivision (a) states: "The covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all owners of separate interests in the development." On its face, this applies to any declaration, regardless of when it is adopted and recorded. Furthermore, the Davis-Stirling Act contains several provisions permitting declarations to be amended. (See §§ 1355, 1355.5, 1356, 1357.) In this case, the amendment was adopted pursuant to section 1355, subdivision (b), which specifically permits declarations to be amended "at any time," provided that the amended declaration is approved of by a simple majority of the unit owners and is recorded. We do not believe that the Legislature would have authorized amendments if it did not intend *784 for them to be enforceable under section 1354. Thus, the pet restriction contained in the amended declaration appears to be enforceable pursuant to section 1354. (See Shorewood West Condominium Ass'n. v. Sadri (2000) 140 Wash.2d 47, 992 P.2d 1008, 1012 [property rights of condominium owners are created by statute, thus lawfully adopted amendments are enforceable against existing owners].)[3]

c. Assessing the Reasonableness of Post-Purchase Amendments

But that still does not resolve the matter. Terifaj correctly notes that Nahrstedt involved a previously existing declaration rather than a subsequently amended one. And Nahrstedt indicates that this distinction may make a difference, at least insofar as the standard for assessing reasonableness is concerned.
Nahrstedt noted that many jurisdictions defer to restrictions contained in the original recorded declaration, but not restrictions subsequently adopted by the association. (Nahrstedt, supra, 8 Cal.4th at p. 376, 33 Cal.Rptr.2d 63, 878 P.2d 1275.) For this proposition, Nahrstedt cited Hidden Harbour Estates, Inc. v. Basso (Fla. App.1981) 393 So.2d 637 (Basso), which described two categories of use restrictions: (1) those contained in the declaration; and (2) those promulgated by the association or the board. Basso explained that the first category of restrictions "are clothed with a very strong presumption of validity which arises from the fact that each individual unit owner purchases his unit knowing of and accepting the restrictions to be imposed.... Indeed, a use restriction in a declaration of condominium may have a certain degree of unreasonableness to it, and yet withstand attack in the courts. If it were otherwise, a unit owner could not rely on the restrictions found in the declaration of condominium, since such restrictions would be in a potential condition of continuous flux." (Id, at pp. 639-640.) Regarding the second category of restrictions, Basso explained that a reasonableness standard was necessary to "somewhat fetter the discretion of the board of directors. By imposing such a standard, the board is required to enact rules and make decisions that are reasonably related to the promotion of the health, happiness and peace of mind of the unit owners." (Id. at p. 640.) Courts applying the Basso rule to amended declarations have focused on the consent rationale and concluded that amended declarations are not entitled to deference because individual unit owners did not have notice of them at the time of purchase. (Mulligan v. Panther Valley (A.D.2001) 337 N.J.Super. 293, 766 A.2d 1186, 1191; Unit Owners Ass'n of Buildamerica-1 v. Gillman (1982) 223 Va. 752, 292 S.E.2d 378, 386-387.)
Nahrstedt appeared to indicate its support for this distinction: "Indeed, giving deference to use restrictions contained in a condominium project's originating documents protects the general expectations of condominium owners `that restrictions in place at the time they purchase their units will be enforceable.' [Citations.] This in turn encourages the development of shared ownership housinggenerally a less costly alternative to single-dwelling ownershipby attracting buyers who prefer a stable, planned environment. It also protects buyers who have paid a premium for condominium units in reliance on a particular restrictive scheme." (Nahrstedt, *785 supra, 8 Cal.4th at p. 377, 33 Cal. Rptr.2d 63, 878 P.2d 1275.)
The Supreme Court subsequently confirmed that Nahrstedt can be interpreted as supporting this distinction. In Lamden v. La Jolla Shores Clubdominium Homeowners Assn. (1999) 21 Cal.4th 249, 87 Cal.Rptr.2d 237, 980 P.2d 940 (Lamden), the court addressed the validity of an association's choice of termite treatment and described Nahrstedt as follows: "In Nahrstedt, moreover, some of our reasoning arguably suggested a distinction between originating CC & R's and subsequently promulgated use restrictions. Specifically, we reasoned in Nahrstedt that giving deference to a development's originating CC & R's `protects the general expectations of condominium owners "that restrictions in place at the time they purchase their units will be enforceable."' [Citations.] Thus, our conclusion [in Nahrstedt] that judicial review of a common interest development's founding CC & R's should proceed under a deferential standard was ... at least partly derived from our understanding (invoked there by way of contrast) that the factors justifying such deference will not necessarily be present when a court considers subsequent, unrecorded community association board decisions." (Id. at p. 264, 87 Cal. Rptr.2d 237, 980 P.2d 940.) Lamden ultimately distinguished Nahrstedt on that basis: "Whereas the restriction at issue in Nahrstedt (a ban on pets), however, was promulgated at the development's inception and enshrined in its founding CC & R's, the decision plaintiff challenges in this case (the choice of secondary over primary termite treatment) was promulgated by the Association's Board long after the Development's inception and after plaintiff had acquired her unit. Our holding in Nahrstedt, which established the standard for judicial review of recorded use restrictions that satisfy the requirements of covenants running with the land or equitable servitudes [citation], therefore, does not directly govern this case, which concerns the standard for judicial review of discretionary economic decisions made by the governing boards of community associations." (Ibid.)
Based on that language, at least one California appellate court has interpreted Nahrstedt and Lamden as adopting the distinction between original declarations and subsequently adopted restrictions. (Dolan-King v. Rancho Sante Fe Assn. (2000) 81 Cal.App.4th 965, 97 Cal.Rptr.2d 280 (Dolan-King).) In Dolan-King, a homeowner challenged the association's decision to reject a proposed home addition and fence for aesthetic reasons. (Id. at pp. 969-970, 97 Cal.Rptr.2d 280.) Some of the applicable aesthetics requirements were contained in the original recorded declaration (id. at p. 970, 97 Cal.Rptr.2d 280), while others were contained in guidelines subsequently promulgated by the association (id. at p. 972, fn. 2, 97 Cal. Rptr.2d 280). The Dolan-King court applied Nahrstedt's deferential standard of review to the restrictions contained in the original recorded covenant, but not to those contained in the subsequently promulgated guidelines. (Id at pp. 975, 977, 97 Cal.Rptr.2d 280.)
Thus, there appears to be a substantial body of case law that would defer to restrictions contained in existing declarations, but not to those adopted by the association after a unit has been purchased. Regardless of the validity of this authority, our previous statutory analysis remains controlling. As discussed above, section 1354 does not distinguish between previously existing declarations and subsequently amended ones, both are presumptively reasonable. As such, the Legislature has conclusively determined that all *786 restrictions contained in recorded declarations are entitled to deference.[4]
This interpretation of section 1354 does not conflict with the California cases cited above. Nahrstedt involved a restriction contained in the original declaration, so any discussion of the standard to be applied to subsequently adopted restrictions was mere dicta. Lamden and Dolan-King did not even involve a declaration governed by section 1354; rather, Lamden involved a maintenance decision made by the board and Dolan-King involved an aesthetics "guideline" that was never incorporated in the declaration.

d. Section 1360.5

To further complicate matters, Terifaj argues that subsequent statutory developments may have undermined the Nahrstedt reasonableness analysis. As Terifaj notes, a restriction will be deemed unreasonable if it violates a fundamental public policy, and Nahrstedt concluded that pet restrictions do not violate public policy in part because "[t]here is no ... California statute that confers a general right to keep household pets...." (Nahrstedt, supra, 8 Cal.4th at pp. 386, 388, 33 Cal.Rptr.2d 63, 878 P.2d 1275.) However, the Legislature subsequently adopted section 1360.5, which provides that "[n]o governing documents shall prohibit the owner of a separate interest within a common interest development from keeping at least one pet within the common interest development, subject to reasonable rules and regulations of the association." Terifaj argues that section 1360.5 undermines the Nahrstedt reasonableness analysis because it creates a general right to keep at least one pet.
We disagree. As Terifaj concedes, this statute only applies to documents entered into on or after January 1, 2001. (§ 1360.5, subd. (e).) Thus, it is not technically applicable to the amended declaration in this case. Furthermore, insofar as section 1360.5 may establish a pet-friendly public policy, the Legislature expressly declined to apply that public policy retroactively, a decision that was itself a matter of public policy that must be honored by the courts. As such, the Nahrstedt reasonableness analysis remains valid, at least insofar as pre-2001 pet restrictions are concerned.

e. Conclusion

In conclusion, the pet restriction contained in the amended declaration is not unreasonable pursuant to Nahrstedt and is therefore an enforceable equitable servitude under section 1354.

2. Attorney Fees

Regarding the attorney fee award, Terifaj argues that the association was only entitled to attorney fees for the proceedings *787 arising from the amended complaint. Terifaj notes that the original complaint was based on the unrecorded no-pets rule and argues that because those rules were not enforceable, the association could never have prevailed on the original complaint and should not be awarded attorney fees for that portion of the proceedings. Although this argument is persuasive as it stands, we reject the underlying premise that the no-pets rule was not enforceable.
Terifaj's only challenge to the no-pets rule is that it was not contained in a recorded declaration. However, as noted above, the original recorded declaration did require that all unit owners "observe, perform and abide by any and all lawful [bylaws], rules, regulations and conditions with respect to the use and occupancy of said premises which may from time to time be adopted" by the board. Therefore, the association's efforts to enforce the no-pets rule were really nothing more than an effort to enforce the restriction contained in the original recorded declaration that all owners comply with the rules adopted by the board. As such, our previous section 1354 analysis is applicable. Pursuant to section 1354, the requirement that owners comply with the rules adopted by the board constitutes an enforceable equitable servitude, unless unreasonable. And requiring owners to comply with a no-pets rule is not unreasonable under Nahrstedt.
This interpretation of the governing documents and section 1354 is supported by Lamden, supra, 21 Cal.4th 249, 87 Cal. Rptr.2d 237, 980 P.2d 940. In Lamden, the Supreme Court deferred to a board's selection of termite treatment because that type of maintenance decision had been specifically entrusted to the board's discretion by the recorded declaration and the statutes. (Id. at pp. 264-265, 87 Cal. Rptr.2d 237, 980 P.2d 940.) Deference is similarly appropriate in this case, where the power to adopt binding rules was specifically entrusted to the board's discretion by the original declaration.[5]
In conclusion, the no-pets rule was enforceable and the association was therefore entitled to attorney fees for the entire proceeding.

3. Nuisance

Lastly, Terifaj argues that a nuisance cannot be established merely by calling it such in the declaration, and that there was no evidence that her dog was a nuisance. However, the issue of whether Terifaj's dog constituted a nuisance is moot. The nuisance cause of action was merely an alternative to the cause of action for enforcement of the declaration, which was itself an action in equity entitling the association to the equitable remedies of declaratory and injunctive relief. (4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 493, pp. 670-671; see also § 1354, subds. (b) & (c) [assuming that declaratory and injunctive relief are appropriate remedies for enforcement of governing documents].)

DISPOSITION
The judgment is affirmed. Respondent shall recover its costs on appeal.
We concur: RICHLI and GAUT, JJ.
NOTES
[1] AH further statutory references will be to the Civil Code unless otherwise indicated.
[2] This argument is a bit disingenuous given that Terifaj admitted that she knew about the unrecorded no-pets rule when she purchased her unit.
[3] On a related note, Terifaj argues that although the prior version of section 1355 allowed declarations to be amended by a simple majority, the Legislature intentionally omitted that provision from the current statutes. Not so. As discussed, the current version of section 1355 also allows declarations to be amended by a simple majority vote.
[4] Even if deference were not required by statute, we would question the wisdom of ever reviewing condominium restrictions for reasonableness. Other courts and commentators have offered well-reasoned criticisms of reasonableness review which we will not repeat here. (See Levandusky v. One Fifth Ave. Apt. Corp. (1990) 75 N.Y.2d 530, 554 N.Y.S.2d 807, 553 N.E.2d 1317, 1322; Goldberg, Community Association Use Restrictions: Applying the Business Judgment Doctrine (1988) 64 Chi.-Kent L.Rev. 653, 674.) We will merely emphasize that by distinguishing between previously existing restrictions and subsequently adopted ones, reasonableness review actually undermines the expectations of those purchasers who correctly understood that the restrictions could be altered to meet the changing needs of their community. Although it may be argued that in reality most purchasers do not understand that the restrictions can be changed (either because they failed to notice the amendment provisions in the governing documents or did not know about the statutes permitting amendments), good public policy should reward those who take the time to educate themselves, not those who blunder forward in blissful ignorance.
[5] We merely cite Lamden to illustrate that a deferential standard of review is appropriate, not to indicate that a quasi-business judgment rule should be applied in this case. Because this case involves a broadly applicable rule analogous to the pet restriction at issue in Nahrstedt, the deferential reasonableness test set forth in Nahrstedt is preferable to the quasi-business judgment rule described in Lamden.