IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

SARA R. MACKENZIE AND RALPH MACKENZIE,

     Appellants,

 v.                                   Case No. 5D16-1254

CENTEX HOMES, BY CENTEX REAL ESTATE
CORPORATION, SULLIVAN RANCH HOMEOWNERS
ASSOCIATION, INC., AND BOARD OF DIRECTORS OF
SULLIVAN RANCH HOMEOWNERS ASSOCIATION, INC.,

     Appellees.

_____/

Opinion filed December 22, 2016

Appeal from the Circuit Court
for Lake County,
William G. Law, Jr., Judge.

Sara R. MacKenzie, Mount Dora, for
Appellants.

Ronald D. Edwards, Jr., and Matthew G.
Brenner, of Lowndes, Drosdick, Doster,
Kantor & Reed, Orlando, for Appellee.

COHEN, J.

     Sara and Ralph MacKenzie appeal summary final judgment entered in favor of

Centex Homes, et al. ("Centex") and the Board of the Sullivan Ranch Homeowners'

Association ("the board" or "the HOA") on Count II of their complaint. The MacKenzies

seek a declaration that Centex failed to meet its obligation to make capital contributions

to the HOA's reserve accounts when it controlled the HOA[1] along with $993,988 in resulting damages. The lower court entered summary final judgment in favor of Centex after it found that section 720.308(1)(b), Florida Statutes (2015), excused Centex from funding the reserve while it funded the deficit in the HOA's current operating expenses. We disagree with the court's interpretations of section 720.308 and find that section 720.303(6), Florida Statutes (2015), required Centex to continue funding the reserve accounts once they were established. We reverse the court's entry of summary final judgment and remand for further proceedings.[2]

The MacKenzies have lived in Sullivan Ranch since 2007. Sullivan Ranch consists of 692 residential lots divided into two sub-associations. The MacKenzies own a lot in the second sub-association, a fifty-five and older community. The lots in Sullivan Ranch are governed by the "declaration of covenants, conditions, and restrictions" and the second amendment ("the declaration"), which were drafted by Centex. Centex was the developer of Sullivan Ranch and appointed the members of the board until December 2015 when the Board was turned over to the homeowners.

The MacKenzies filed the operative complaint, their fifth amended complaint, in April 2015 while the HOA was still controlled by Centex. They alleged three counts but only appeal summary judgment as to Count II. Count II alleged that Centex failed to make

---

[1] "Reserve accounts" are monies set aside for future capital expenditures and deferred maintenance of common areas. See § 701.303(6)(b), Fla. Stat. (2015). The goal of establishing reserves is to reduce the need for special assessments. Amy S. Thompson, Legislative Changes to Chapter 720: Homeowners' Associations, Florida Statutes, Regular Legislative Session 2007 and 2008, 82 Fla. Bar J. 20, 22 (Dec. 2008).

[2] Appellees have asked that summary judgment be affirmed as to the current board because they are not a proper party to this litigation. Even though this argument appears to have merit, the proper remedy for the board is to seek dismissal under Florida Rule of Civil Procedure 1.420(a)(1). See also Fla. R. Civ. P. 1.250(b).

capital contributions to the HOA's reserve accounts as required by sections 8.2 and 8.6(b) of the declaration and subsections 720.303(6)(b),(d) and (f) of the Florida Statutes.

Centex contributed an initial $32,300 to the reserve funds in 2007. Centex later stopped contributing to the reserve funds although it continued to include a line item for reserve funds in the budget and collected reserve funds on the non-developer owned properties. Centex opted to pay Sullivan Ranch's operating expenses in lieu of making any contributions to the reserve accounts and claimed that it had made no guarantee about funding the reserves. The MacKenzies allege the HOA is due approximately $993,988, and they seek a declaration that Centex was obligated to make capital contributions during the time it controlled the HOA.

Centex argues that the MacKenzies lack standing to pursue their claim and that the lower court lacked jurisdiction over the action because the MacKenzies had not met the requirements for seeking a declaratory judgment under section 86.011, Florida Statutes (2015). Centex has not filed a cross appeal; therefore, this Court has no jurisdiction over the standing issue. See Philip J. Padovano, Florida Appellate Practice § 23:9 at 483 (2011) ("In the absence of a cross appeal, the appellee may only defend the order of the lower court and may not seek affirmative relief from any part of the order."). A cross appeal is the proper method to seek review of an earlier non-final order when the final order is entirely favorable to the appellee. See Fla. R. App. P. 9.130(g),(h); Allen v. TIC Participations Tr., 722 So. 2d 260, 261 (Fla. 4th DCA 1998) (denying motion to dismiss cross appeal).[3]

---

[3] Centex urges this Court to affirm the order for lack of standing under the tipsy-coachman doctrine. Yet lack of standing is not a proper tipsy-coachman argument because it would require the order on appeal be dismissed rather than affirmed. The tipsy-coachman doctrine only applies where the trial court "reaches the right result, but for the wrong reason." Robertson v. State, 829 So. 2d 901, 906 (Fla. 2002) (emphasis added).

Regardless of a cross appeal, this Court has an independent obligation to ensure jurisdiction was proper. See Shannon v. Cheney Bros., Inc., 157 So. 3d 397, 199 (Fla. 1st DCA 2015). Circuit courts have jurisdiction to "render declaratory judgments on the existence, or nonexistence: [] [o]f any immunity, power, privilege, or right . . . ." § 86.011, Fla. Stat. To obtain a declaratory judgment "the plaintiff must show a bona fide, actual, present, and practical need for the declaration." Wilson v. Cty. of Orange, 881 So. 2d 625, 631 (Fla. 5th DCA 2004) (quoting X Corp. v. Y Person, 622 So. 2d 1098, 1101 (Fla. 2d DCA 1993)).

Section 720.305, Florida Statutes (2015), provides any member of an HOA with the right to bring an action against the HOA or another member to "redress alleged failure or refusal to comply with [the HOA statutory provisions]." The declaration provides every property owner with a similar right. Centex argues that the MacKenzies have no right to a declaratory judgment as to the reserve funds because any recovery of such funds would flow to the reserve accounts of the HOA and not to the MacKenizes. Yet any increase in the reserve funds will make it less likely that special assessments will be required in the future—special assessments that would come directly from the MacKenzies and their heirs or assigns. Thus, we find the MacKenzies have a statutory and contractual right to enforce the declaration and a bona fide interest in the account. Jurisdiction is appropriate.

This Court reviews motions for summary final judgment de novo. Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). Summary final judgment is required where the pleadings and summary judgment evidence demonstrate that 1) there is no genuine issue of material fact, and that 2) the moving party is entitled to judgment as a matter of law. Fla. R. Civ. P. 1.510(c). Issues of contract and statutory interpretation are reviewed de novo as they raise questions of law. See, e.g., State v.

4

Daniels, 158 So. 3d 629, 630 (Fla. 5th DCA 2014); Heylin v. Gulfstream Prop. & Cas. Ins. Co., 147 So. 3d 659, 661 (Fla. 5th DCA 2014). When a statute is susceptible to only one reasonable interpretation, the plain language of the statute controls. Fla. Dep't of Highway Safety & Motor Vehicles v. Hernandez, 74 So. 3d 1070, 1074 (Fla. 5th DCA 2011). Only where the plain language of a statute is ambiguous—where a reasonable person could find two different meanings leading to two different outcomes—will this Court resort to the tools of statutory construction. Fla. Dep't of Transp. v. Clipper Bay Invs., LLC, 160 So. 3d 858, 862 (Fla. 2015).

The Homeowners' Association Act, which governs this action, "provide[s] procedures for operating homeowners' associations, and [] protect[s] the rights of association members without unduly impairing the ability of such associations to perform their functions." § 720.302(1), Fla. Stat. (2015). Centex argues that section 720.308(1)(b) excused it from funding the HOA's reserve accounts. Section 720.308(1)(b) provides a developer the right to avoid paying its share of "operating expenses and assessments" on the lots the developer controls when it controls the board and elects to fund the difference between the assessments received from the lot owners and the "operating expenses incurred that exceed the assessments receivable." § 720.308(1)(b), Fla. Stat. This is referred to as "deficit funding." See In re Majorca Isles Master Ass'n, Inc., No. 12-19056-BKC-AJC, 2016 WL 6157437 at *10 (Bankr. S.D. Fla. Oct. 21, 2016). Centex argues that by deficit funding the HOA, it was excused from any obligation to fund the reserve accounts.

Centex's argument depends on an ambiguity in section 720.308(1)(b)—the subsection excuses a developer from paying its share of "operating expenses and assessments" if the developer funds the deficit in operating expenses. § 720.308(1)(b),

5

Fla. Stat. The subsection is unclear as to whether the developer is excused from all other contributions, including contributions to the reserves, or if the developer is merely excused from paying the regular assessments on the properties. The declaration is, if anything, more ambiguous on this point as it specifically excludes contributions to reserves from the operating expenses without specifying whether Centex is liable for those expenses in addition to the operating deficit. Given this ambiguity, we turn to the tools of statutory construction to resolve this dispute.

The doctrine of in pari materia requires that statutes related to the same subject be "construed together to harmonize the statutes and to give effect to the Legislature's intent." Deen v. Wilson, 1 So. 3d 1179, 1182 (Fla. 5th DCA 2009). The Florida Supreme Court has specified that Florida courts have a duty to adopt constructions of statutes that harmonize provisions within the same act. Knowles v. Beverly Enterprise-Fla., Inc., 898 So. 2d 1, 9 (Fla. 2004).

Section 720.303(6)(d) of the Homeowners' Association Act requires an HOA to fund reserve accounts once they have been established.[4] Section 8.2 of the declaration likewise requires the board of Sullivan Ranch to include a reserve fund in its budgeting, although it allows the board to exercise its "business judgment" in establishing the amount of such reserves. Under the declaration, reserve funds are required to be held in a separate account and to be used for "major maintenance, repair, or replacement of those assets covered by the reserve budget . . . ." Although the statute allows an HOA that is liable for deferred maintenance to forego creating reserve accounts, it requires that the

---

[4] See § 720.303(6)(d), Fla. Stat. ("Once established as provided in this subsection, the reserve accounts must be funded or maintained or have their funding waived in the manner provided in paragraph (f).").

HOA's budgets indicate that no reserves are being provided for by making a specific declaration in conspicuous font. § 720.303(6)(c)(1.), Fla. Stat. If reserve funds are provided for in the budget but no accounts are actually established, the statute requires that the failure to fund reserves be indicated in the budgets again using a conspicuous font. § 720.303(6)(c)(2.), Fla. Stat. The statute provides that the reserves may be reduced following a meeting and vote. § 720.303(6)(f), Fla. Stat.

Centex argues that because assessments are defined broadly to include all monies owed to the HOA, an excuse from contributing "operating expenses and assessments" must include more than just the operating expenses—it must excuse the developer from paying the reserve contributions as well because reserve funds are monies owed to the HOA.[5] Yet reading section 720.308(1)(b) to exhaust Centex's funding requirements creates a direct conflict with section 720.303(6), which requires reserve accounts be funded once established or defunded according to a regular procedure with specific notice to the homeowners. The legislature's requirement that changes to funding of the reserve accounts be conspicuously noted in the financial reports—reports which must be made available to all homeowners pursuant to section 720.303(7)—evidences an intent to keep homeowners aware of the state of reserve finances and to avoid allowing developers and boards to surprise homeowners with unexpected special assessments.

Reading section 720.308(1)(b) not to address the reserve accounts—leaving the original obligation to fund reserves in place—avoids a conflict with section 720.303(6) and ensures that the purposes of the sections are met, given that section 720.303(6) was specifically amended to provide for reserve accounts and avoid the need for special

---

[5] See § 720.301(1), Fla. Stat (2015) ("'Assessment' . . . means a sum or sums of money payable to the association, . . . which if not paid by the owner of a parcel, can result in a lien against the parcel.").

assessments. See Ch. 2007-173, Law of Fla. § 9. Moreover, it forces developers to comply with section 720.303(6) by either paying the reserve funds or waiving them at a proper meeting and noting the absence of reserve funds in a conspicuous location in the financial reports. Cf. Meritage Homes of Fla., Inc. v. Lake Roberts Landing Homeowners, 190 So. 3d 651, 652–53 (Fla. 5th DCA 2016) (affirming order requiring developer to pay reserve funds based on the developer's failure to follow proper procedures before waiving funds).

Here, the declaration provides for reserve accounts, and Centex made an initial contribution to the reserve fund in the amount of $32,300 before removing those funds. Thus, under section 720.303(6), Centex is obligated to fund or maintain the reserves or vote to reduce or eliminate them and provide notice in the HOA's financial reports. See § 720.303(6)(d), Fla. Stat.

Centex argues, alternatively, that section 720.303(6) affects only the budgeting for the reserves not the funding of such reserves. Although section 720.303(6) refers specifically to "budgeting," that section also speaks of "funding" and maintaining in subsections (d) and (f). Those subsections unambiguously require that reserve accounts, once established, must be funded or waived by a vote of the members, and they provide no support for treating the obligation to budget as completely distinct from the obligation to fund.

The difficulty with Centex's position is clear when considering the disclosure requirements of subsection 720.303(6)(c). Subsection (c) requires notice to homeowners when the budget does not provide funding for reserve accounts. § 720.303(6)(c), Fla. Stat. According to Centex, this is merely a requirement that a line item occur in the budget for "reserve accounts" and the question of whether the funds actually exist is immaterial.

8

Under Centex's interpretation, a board could completely defund the reserve accounts without notifying homeowners, provided it continued to include a tally of what the reserve accounts ought to contain. This interpretation is incorrect because the plain language of subsection (c) requires the HOA to notify homeowners if it fails to fund the reserve accounts established in the budget. See § 720.303(6)(c)(2.), Fla. Stat.

Mindful of this Court's duty to construe statutory provisions as a whole where the plain language is ambiguous, we conclude that section 720.308(1)(b) should not be read to excuse a developer's otherwise valid obligation to fund reserves while it controls the HOA. Therefore, we reverse the summary final judgment and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED for further proceedings.

SAWAYA and EDWARDS, JJ., concur.