DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**VALENCIA RESERVE HOMEOWNERS ASSOCIATION, INC.,**
Appellant,

v.

**BOYNTON BEACH ASSOCIATES, XIX, LLLP,**
Appellee.

No. 4D18-1320

[August 28, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Peter D. Blanc, Judge; L.T. Case No. 502016CA007123XXXXMBAB.

Robert Rivas of Sachs Sax Caplan, P.L., Tallahassee, for appellant.

Mark F. Bideau and Robert R. Kane III of Greenberg Traurig, P.A., West Palm Beach, and Julissa Rodriguez and Jay A. Yagoda of Greenberg Traurig, P.A., Miami, for appellee.

BOATWRIGHT, JOE, Associate Judge.

Appellant, Valencia Reserve Homeowners Association, Inc. ("HOA"), appeals the circuit court's final order granting partial summary judgment in favor of Appellee, Boynton Beach Associates XIX, LLLP ("Developer"). The HOA challenges the Developer's use of certain monies collected from homeowners to offset the Developer's financial obligation to the HOA. Specifically, the HOA claims that the Developer's use of the "working fund contribution" to offset its financial obligation to the HOA is prohibited by the Homeowners' Association Act ("HOA Act"), codified in Chapter 720, Florida Statutes. We hold that the Developer's use of the working fund contributions to offset its financial obligation to the HOA does not contravene Chapter 720. Therefore, we affirm the decision below.

## BACKGROUND

Valencia Reserve is a single-family home residential community located in Palm Beach County. Valencia Reserve's HOA was established and governed pursuant to a Declaration of Covenants, Restrictions and

Easements ("declaration") and the HOA Act. The Developer controlled the HOA from its inception until the date of turnover, when the Developer gave control of the HOA to the community's homeowners.

According to the declaration, the Developer was required to pay its share of assessments on any lot owned by the Developer while the Developer was in control of the HOA. Pursuant to the declaration and the HOA act, the Developer had the right to excuse itself from payment of its share of assessments related to its lots so long as the Developer obligated itself to pay the deficit—*i.e.*, any operating expenses incurred during the guarantee period which exceeded the assessments receivable from other members. The guarantee period began when the Developer recorded the declaration and ended upon the turnover date.

The declaration defined the term "deficit" as the difference between the operating expenses incurred by the HOA during the guarantee period and the sum of: 1) the amounts assessed as guaranteed assessments against owners during the guarantee period; 2) the "working fund contributions"; and 3) any other income of the HOA.

In order to offset the deficit obligation, the Developer used a provision in the declaration called the "Working Fund Contribution." The declaration's section entitled "Working Fund Contribution" states as follows:

> Each Owner who purchases a Lot with a Home thereon from [the Developer] shall pay to the [HOA] at the time legal title is conveyed to such Owner, a "Working Fund Contribution." The Working Fund Contribution shall be an amount equal to a three (3) months' share of the annual, non-abated Operating Expenses applicable to such Lot pursuant to the initial Budget . . . . The purpose of the Working Fund Contribution is to insure that the [HOA] will have cash available for initial start-up expenses, to meet unforeseen expenditures and to acquire additional equipment and services deemed necessary or desirable by the Board. Working Fund Contributions are not advance payments of Individual Lot Assessments and shall have no effect on future Individual Lot Assessments, nor will they be held in reserve. . . . Working Fund Contributions . . . may also be used to offset Operating Expenses, both during the Guarantee Period . . . and thereafter.

The Developer elected to excuse itself from paying its share of assessments and thereby obligated itself to pay the deficit incurred during

2

the guarantee period. Before the turnover, the Developer used the working fund contributions to satisfy the deficit, as authorized by the above provision.

The HOA then sued the Developer, claiming that the working fund contributions could not be used to offset the deficit obligation under the HOA Act. Both parties filed cross motions for summary judgment. The circuit court granted summary judgment in favor of the Developer, finding that the working fund contributions could be used to offset the deficit amount. This appeal follows.

## STANDARD OF REVIEW

A trial court's interpretation of a declaration of a homeowners' association is subject to de novo review. *Klinow v. Island Court at Boca W. Prop. Owners' Ass'n, Inc.,* 64 So. 3d 177, 180 (Fla. 4th DCA 2011). "The constitution and by-laws of a voluntary association, when subscribed or assented to by the members, becomes a contract between each member and the association." *Waverly 1 & 2, LLC v. Waverly at Las Olas Condo. Ass'n, Inc.,* 242 So. 3d 425, 428 (Fla. 4th DCA 2018) (citation omitted). "Issues of contract and statutory interpretation are reviewed de novo as they raise questions of law." *MacKenzie v. Centex Homes*, 208 So. 3d 790, 793 (Fla. 5th DCA 2016).

## APPLICABLE LAW

"When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." *A.R. Douglass, Inc., v. McRainey*, 137 So. 157, 159 (Fla. 1931). "This court is without power to construe an unambiguous statute in a way which would extend, modify, or limit its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power." *Am. Bankers Life Assur. Co. of Fla. v. Williams*, 212 So. 2d 777, 778 (Fla. 1st DCA 1968). "When a statute is susceptible to only one reasonable interpretation, the plain language of the statute controls. Only where the plain language of a statute is ambiguous—where a reasonable person could find two different meanings leading to two different outcomes—will this Court resort to the tools of statutory construction." *See MacKenzie*, 208 So. 3d at 793 (citation omitted). Finally, "[a] statute should be interpreted to give effect to every clause in it, and to accord meaning and harmony to all of its parts." *Giamberini v. Dep't of Fin. Servs.,* 162 So. 3d 1133, 1136 (Fla. 4th DCA

2015) (citation omitted). "A single word or provision of a statute cannot be read in isolation." *Id.*

"The purposes of [the HOA Act] are to give statutory recognition to corporations not for profit that operate residential communities in this state, to provide procedures for operating homeowners' associations, and to protect the rights of association members without unduly impairing the ability of such associations to perform their functions." § 720.302(1), Fla. Stat. (2018). To this end, Section 720.309(1), Florida Statutes (2018), states:

> Any grant or reservation made by any document, and any contract that has a term greater than 10 years, that is made by an association before control of the association is turned over to the members other than the developer, and that provides for the operation, maintenance, or management of the association or common areas, must be fair and reasonable.

With regard to a developer's financial obligation to an HOA before turnover, Section 720.308(1)(b), Florida Statutes (2018), provides:

> While the developer is in control of the homeowners' association, it may be excused from payment of its share of the operating expenses and assessments related to its parcels for any period of time for which the developer has, in the declaration, obligated itself to pay any operating expenses incurred that exceed the assessments receivable from other members and other income of the association.

Thus, Section 720.308(1)(b) allows a developer to forego paying HOA assessments on lots which it owns provided that the developer agrees "to pay any operating expenses incurred that exceed the assessments receivable from other members and other income of the association." *Id.*

If a developer chooses to rely upon Section 720.308(1)(b), the developer's potential financial obligation to the HOA is calculated using a formula outlined in Section 720.308(5), Florida Statutes (2018). Section 720.308(5) provides:

> The guarantor's total financial obligation to the association at the end of the guarantee period shall be determined on the accrual basis using the following formula: the guarantor shall pay any deficits that exceed the guaranteed amount, less the

4

total regular periodic assessments earned by the association from the members other than the guarantor during the guarantee period regardless of whether the actual level charged was less than the maximum guaranteed amount.

In other words, at the end of the guarantee period, when the developer turns over control of the HOA to the homeowners, the developer must pay "any deficits that exceed the guaranteed amount, less the total regular periodic assessments" received from other HOA members. *Id.*

An "assessment," as defined by Section 720.301(1), Florida Statutes (2018), is a "sum or sums of money payable to the association, to the developer or other owner of common areas, or to recreational facilities and other properties serving the parcels by the owners of one or more parcels as authorized in the governing documents, which if not paid by the owner of a parcel, can result in a lien against the parcel." Further, Section 720.308(1) and (1)(a), Florida Statutes (2018), provides that "the governing documents must describe the manner in which expenses are shared and specify the member's proportional share thereof" and "assessments levied pursuant to the annual budget or special assessment must be in the member's proportional share of expenses as described in the governing document." Notably, Sections 720.308(6) and 720.308(4)(b), Florida Statutes (2018), prohibit the developer from using "[a]ny portion of the parcel assessment which is budgeted for designated capital contributions of the association" to pay for operating expenses.

If an HOA declaration's terms contravene a governing statute, the term is deemed invalid. *Palm Bay Towers Corp. v. Brooks*, 466 So. 2d 1071, 1074 (Fla. 3d DCA 1984). However, a declaration's terms are afforded a "very strong presumption of validity which arises from the fact that each individual [lot] owner purchases his [lot] knowing of and accepting" the declaration's terms. *Hidden Harbour Ests., Inc., v. Basso*, 393 So. 2d 637, 639 (Fla. 4th DCA 1981).

## ANALYSIS

The issue before this Court is whether the Developer's use of the working fund contributions to offset its deficit obligation is prohibited by Chapter 720 and, in particular, Section 720.308. We begin our analysis by noting that the statutory provisions at issue in the instant case are clear and unambiguous such that this Court has no occasion to resort to the rules of statutory construction. *See MacKenzie*, 208 So. 3d at 793. Thus, we must give the relevant provisions in Chapter 720 their plain and obvious meanings. In doing so, we hold that the declaration's terms, which

permitted the Developer to use the working fund contributions to offset its deficit obligation, did not contravene Chapter 720. Therefore, we affirm the circuit court's final order granting partial summary judgment in the Developer's favor for the following reasons.

First, the declaration's section entitled "Working Fund Contribution" clearly stated that each lot owner would be obligated to pay an amount equal to three months' share of the initial budget's annual, non-abated operating expenses. The declaration specified that these funds were due at the time legal title was conveyed to the lot owner. Significantly, the declaration specifically stated that these funds could be used for, among other things, initial startup expenses, unforeseen expenditures, and "to offset Operating Expenses, both during the Guarantee Period . . . and thereafter." The declaration also explicitly stated that the working fund contribution could be used to reduce the operating expense deficit. As the declaration contained these terms at the time of recording, every Valencia Reserve lot owner agreed to pay the working fund contribution and knew that these funds could be used to cover operating expenses and offset the Developer's deficit obligation. *See Hidden Harbour Ests., Inc.*, 393 So. 2d at 639. Given that each lot owner expressly agreed to these terms upon completing the property purchase, we similarly find that the declaration's provision authorizing the Developer to use the working fund contributions to offset its deficit obligation was "fair and reasonable" as required by Section 720.309(1).

Second, the Developer's use of the working fund contributions to pay for operating expenses did not violate Sections 720.308(4)(b) and 720.308(6). Under these sections, a developer may not pay for operating expenses using lot assessments which have been budgeted for designated capital contributions. Here, the working fund contributions were not budgeted for designated capital contributions, thus, Sections 720.308(4)(b) and 720.308(6) do not apply.

Third, we agree with the circuit court's conclusion that the working fund contributions qualified as regular periodic assessments for the purpose of calculating the Developer's final deficit obligation under Section 720.308(5). Per the declaration, all lot owners were required to pay the working fund contribution at the time of conveyance. The declaration further stated that the working fund contributions could be used to pay the HOA's operating expenses or offset operating expenses during or after the guarantee period. Under Chapter 720, nothing prevents an assessment from being used to pay an HOA's operating expenses. Consequently, the working fund contribution would qualify as an assessment as it could be used to pay the expenses of the HOA.

6

Although only paid once, the working fund contribution was equal to three months' share of the annual regular assessments calculated pursuant to the initial budget. In essence, the working fund contribution was the first regular periodic assessment, due as an upfront, lumpsum payment. Thereafter, periodic payments were due at regular intervals set by the declaration. Accordingly, the working fund contribution is consistent with a regular periodic assessment that could be used to pay or offset operating expenses.

In conclusion, the use of the working fund contributions to offset the Developer's deficit obligation did not violate the HOA Act. We find nothing in Chapter 720 that prohibits the Developer's action in this case. If the legislature wishes to prevent such action, it can do so by enacting legislation to that effect.

Finally, we find no merit to the HOA's argument that genuine issues of material fact precluded summary judgment. The parties filed cross motions for summary judgment and stipulated that there were no material facts in dispute. Moreover, the HOA has not identified any disputed material facts to support its argument that summary judgment was improper.

Therefore, we affirm the decision below.

*Affirmed.*

LEVINE, C.J. and KUNTZ, J., concur.

\*     \*     \*

**Not final until disposition of timely filed motion for rehearing.**

7