DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**VITALIA AT TRADITION RESIDENTS' ASSOCIATION, INC.,**
a Florida not-for-profit corporation,
Appellant,

v.

**VITALIA AT TRADITION, LLC,** a Florida limited liability company,
Appellee.

No. 4D2023-1203

[November 13, 2024]

Appeal and cross-appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Robert E. Belanger, Judge; L.T. Case No. 56-2021-CA-000491-AXXX-HC.

Daniel S. Rosenbaum and Dina L. Rosenbaum of Rosenbaum PLLC, West Palm Beach, for appellant.

Joseph H. Lang, Jr., Dane R. Blunt, and Lannie D. Hough, Jr., of Carlton Fields, P.A., Tampa, for appellee.

CONNER, J.

In this appeal, we review two summary judgments addressing two separate disputes regarding a residential community developer's liability for homeowners' association assessments.

The association, Vitalia at Tradition Residents' Association, Inc., appeals from the trial court's summary judgment in the developer's favor regarding the sufficiency of the developer's contributions to the association's reserve funds prior to "turnover," which refers to the point at which the developer turned over control of the development and association to parcel owners in the development. The association raises multiple issues on appeal. As to all issues raised by association in the main appeal, we affirm the trial court's rulings without further comment.

The developer, Vitalia at Tradition, LLC, cross-appeals from the trial court's summary judgment determining that the developer was not exempt from paying assessments for parcels which it owned after turnover. On

the cross-appeal, we also affirm the trial court, but write to explain our reasoning.

*Background*

Vitalia at Tradition ("Vitalia") is a residential community governed by a declaration of covenants created pursuant to chapter 720, Florida Statutes, which governs the operation of homeowners' associations. As authorized by chapter 720, the declaration provided for the creation of the appellant association. Vitalia's declaration and association bylaws were publicly recorded. The recorded declaration incorporated and attached the bylaws.

As required by chapter 720, Vitalia's declaration and bylaws described how association expenses are to be shared among members in the form of assessments. These "governing documents" provided for monthly assessments for operational expenses, as determined by an annual budget proposed by the association's board of directors and approved by the membership. The governing documents also provided for the possibility of assessments for capital improvements, special needs, and reserves for long-term maintenance, repair, and replacement of community common property.

From 2005 until early January 2020, the developer controlled the development and the association's board of directors. Until turnover, the developer also maintained a membership voting majority.

Starting in 2015, the developer decided the community needed a reserve fund for the maintenance, repair, and replacement of common property. For 2015, the developer created a voluntary reserve fund as allowed chapter 720. In 2016, the developer created a more formal reserve fund controlled by more stringent statutory requirements.

As discussed more fully below, prior to turnover, the developer was not required to pay assessments for its parcels because the developer had elected to pay any association expense deficits not covered by homeowner assessments and other association income. Significantly, the developer had also included provisions in the declaration that had exempted the developer for paying assessments <u>after</u> turnover, which became one focus of the summary judgment which we review on cross-appeal.

In anticipation of turning over control of the development in early January 2020, the association board, still controlled by the developer, proposed in the latter part of 2019 an association budget for 2020. The

2

proposed 2020 budget was approved by the association membership. The approved 2020 budget contemplated, for the first time, that the developer would pay assessments after turnover.

An independent audit covering the period from January 1, 2019, through January 7, 2020 (the turnover date) was prepared in April 2020. That audit determined the developer still owed the association a large sum for operating deficits—which deficits, again, the developer had elected to pay to avoid paying monthly assessments in 2019. The developer paid a substantial amount of the unpaid deficit. The developer, however, refused to pay the remaining deficit balance, claiming it should be entitled to a credit for the 2020 monthly assessments which it voluntarily—but allegedly mistakenly—had paid post-turnover for its parcels. As authority for the credit, the developer relied upon declaration section 22.22, discussed more fully below.

The association moved for summary judgment regarding the developer's claimed credit on the balance due for the unpaid 2019 association expense deficit. The association asserted that the language of declaration section 22.22 exempting the developer from payment of assessments on its own properties after turnover was unenforceable because it conflicted with section 720.308, Florida Statutes (2019), governing the proportional allocation of assessments among members. The trial court granted summary judgment in the association's favor, resulting in the cross-appeal.

*Appellate Analysis*

The trial court granted the association's motion for summary judgment after concluding that declaration section 22.22 conflicts with section 720.308, Florida Statutes (2019), and is unenforceable to the extent the declaration section exempts the developer from payment of assessments post-turnover.

Our review of the grant of summary judgment, as well as statutory and association document interpretation, is de novo. *See Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000); *Valencia Reserve Homeowners Ass'n, Inc. v. Boynton Beach Assocs., XIX, LLLP*, 278 So. 3d 714, 716-17 (Fla. 4th DCA 2019); *MacKenzie v. Centex Homes*, 208 So. 3d 790, 793 (Fla. 5th DCA 2016).

As background, section 720.302(1), Florida Statutes (2019), makes clear that one of the purposes of chapter 720, the Florida's Homeowners' Association Act, is "to provide procedures for operating homeowners'

associations, and to protect the rights of association members without unduly impairing the ability of such associations to perform their functions." § 720.302(1), Fla. Stat. (2019). These governance procedures must be documented in the recorded declaration of covenants and bylaws and must comport with statutory requirements. As we held in *Valencia Reserve*: "If [a homeowners association] declaration's terms contravene a governing statute, the term is deemed invalid." 278 So. 3d at 718.

With that backdrop, we proceed with reviewing the summary judgment rejecting the developer's claimed credit for assessments, which the developer asserts were mistakenly paid. We note that this opinion, as well as the trial court's grant of summary judgment, may also impact the developer's entitlement to an ongoing exemption from payment of assessments post-turnover.

Because the governing documents of a homeowners' association must comport with statutory requirements, our analysis of the developer's obligation to pay assessments begins with section 720.308(1), Florida Statutes (2019), which provides the authority for associations to levy assessments for the payment of community expenses:

> **Assessments.**--For any community created after October 1, 1995, the governing documents must describe the manner in which expenses are shared and specify the member's proportional share thereof.
>
> (a) Assessments levied pursuant to the annual budget or special assessment <u>must be in the member's proportional share of expenses as described in the governing document</u>, which share may be different <u>among classes of parcels</u> based upon the state of development thereof, levels of services received by the applicable members, or other relevant factors.
>
> (b) <u>While the developer is in control of the homeowners' association</u>, it may be <u>excused from payment</u> of its share of the operating expenses and assessments related to its parcels <u>for any period of time for which the developer has, in the declaration, obligated itself to pay any operating expenses incurred that exceed the assessments receivable</u> from other members and other income of the association.

§ 720.308(1), Fla. Stat. (2019) (emphasis added).

Importantly, section 720.308(1)(a) contemplates that every member of the association must pay a proportional share of the association's expenses. Section 720.308(1)(b) allows a developer to be "excused" from paying its proportional share for developer-owned parcels while the developer controls the association, but no provision excuses the developer from payment post-turnover. *Id.* Section 720.308(1)(a), in contrast, applies both pre-turnover and post-turnover and allows the developer to pay a different proportional share than other parcel owners, but only if the governing documents create a "class[] of parcels" treating the developer's lots differently. *Id.* Notably, while Vitalia's governing documents designate classes of <u>association members</u> pre-turnover, the documents do not explicitly designate different "classes of parcels" based on the development of the parcel, levels of service provided, "or other relevant factors."

Declaration section 22.9 mirrors section 720.308(1)(b)'s "excusal" of the developer from paying assessments by providing the developer with the option, prior to turnover, of either paying monthly assessments for its parcels or funding the deficits in association expenses. No dispute exists that, prior to turnover, the developer did not pay monthly assessments and instead paid deficits in the association expenses as allowed by statute.

The dispute between the parties below and on cross-appeal revolves around declaration section 22.22, which purportedly grants a blanket exemption to the developer from payment of assessments <u>both before and after turnover</u>. Section 22.22 provides:

> Notwithstanding anything to the contrary in this Declaration, neither Developer, CDDs nor any Home or property owned by Developer shall (unless specified to the contrary by Developer in a separate written instrument) be responsible for any Assessments of any nature or any portion of Association Expenses. Developer, at Developer's sole option, may pay Assessments on Homes owned by it or fund the deficit, if any, as set forth in Section 22.9 of this Declaration.

The association argued below and on cross-appeal that declaration section 22.22's purported exemption of the developer from payment of assessments <u>after turnover</u> conflicts with the language of section 720.308(1), which authorizes the developer to be excused from payment of assessments <u>prior to turnover</u>, as the statute does not "excuse" or "exempt" the developer post-turnover. More specifically, the association, citing *Valencia Reserve,* argues that to the extent declaration section 22.22 was intended to exempt the developer from payment of assessments post-

turnover, the provision conflicts with section 720.308(1) and is therefore unenforceable.

The developer argued below and on cross-appeal that the section 22.22 exemption is valid post-turnover because (1) section 720.308(1) allows association governing documents to control the determination of the proportional share of assessments payable by the members, (2) Vitalia's governing documents clearly provide that only "Owners" (defined in the declaration to exclude the developer) are required to pay assessments, and (3) declaration sections 22.9 and 22.22 effectively mean that the developer's proportional share of assessments is always zero.

In granting summary judgment in the association's favor, the trial court disagreed with the developer's latter argument and stated: "'Proportionate share' cannot be zero by definition." Although the record is not clear as to what "definition" the trial court was referring, we are nonetheless satisfied that the trial court properly granted summary judgment against the developer.

The developer's argument that declaration sections 22.9 and 22.22 establish the developer's proportional share of assessments as zero and exempt the developer from paying assessments post-turnover fails for three reasons.

First, the governing documents did not clearly create specific "classes of parcels" as section 720.308(1)(a) contemplates. Without the developer's parcels all falling into classes identified as paying a differing share, section 720.308(1)(a) requires the developer's post-turnover share would be the same as other members. *See* § 720.308(1)(a), Fla. Stat. (2019).

Second, to the extent the association bylaws could be read as creating "classes of parcels" by designating two classes of association membership, the bylaws placed the developer in the same class as "Owners" post-turnover.[1]

Third, declaration section 22.5.2, dealing with the allocation of association expenses, clearly provides that assessments are to be allocated "based on a fraction, <u>the numerator of which is one (1)</u> and the

---

[1] The bylaws created two classes of membership for voting: Class A and Class B. Class A was composed of "Owners" and Class B's sole member was the developer. However, the bylaws clearly provided that post-turnover, "Class B membership shall cease" and "[u]pon termination of the Class B membership, Developer shall be deemed and become a Class A Member[.]"

denominator of which is the total number of Homes in Vitalia conveyed to Owners as of the immediately preceding September 30th or any greater number determined by Developer from time to time." (Emphasis added.) Because the declaration requires the numerator to be one, proportional shares of assessments can never be zero "by definition" under the declaration.

Although we have not adopted a substantial portion of the trial court's reasoning in granting summary judgment, we conclude the trial court correctly determined, after considering section 720.308(1) and the governing association documents, that (1) the developer's excusal from paying assessments applied while the developer controlled the association; and (2) after turnover, the developer no longer qualified for excusal from paying assessments. Thus, the purported grant of an exemption from payment of assessments post-turnover provided in declaration section 22.22 was unenforceable because it conflicted with section 720.308(1). *See Valencia Reserve*, 278 So. 3d at 718.

Thus, we affirm the summary judgment contested in the cross-appeal, as well as the summary judgment contested in the main appeal.

*Affirmed.*

WARNER and MAY, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**

7