393 So.2d 637 (1981)
HIDDEN HARBOUR ESTATES, INC., a Florida Not for Profit Corporation, Appellant,
v.
Arthur BASSO and Helen Basso, His Wife, Appellees.
No. 78-2688.
District Court of Appeal of Florida, Fourth District.
February 11, 1981.
*638 Walter M. Meginniss of Crary, Buchanan & Meginniss, Chartered, Stuart, for appellant.
Edna L. Caruso, West Palm Beach and Tooker & Gamba, P.A., Stuart, for appellees.
MOORE, Judge.
Plaintiff, Hidden Harbour Estates, appeals from a final judgment denying its request for injunctive relief. Hidden Harbour had sought to enjoin the appellees from maintaining a shallow water well on their property. We affirm.
Hidden Harbour Estates is a condominium development containing mobile homes situated on lots owned by the individual residents. In 1975, Hidden Harbour's Board of Directors became aware of an increase in the salinity of the two deep well systems which supplied the water for the common usage of the unit owners. In May, 1975, the Board adopted a regulation that restricted lawn watering to one day per week while a member of the Board of Directors, Charles Burtoft, conducted a study of the water-salinity problem. Later in 1975, when the salinity of the well water decreased, the restriction was relaxed.
In November, 1975, the Bassos, who were owners of one of the mobile home units, applied to the Board of Directors for permission to drill a shallow well on their property. Such permission was allegedly required under the use restrictions in Article 13 of the Declaration of Condominium, which stated:
13.1. The use of the condominium will be in accordance with the following provisions, as long as the condominium exists:
a... . . No temporary or permanent improvements or alterations may be made to any lot, and no lot owner may change the appearance of any portion of the exterior of his mobile home or apartment without the written approval of the Board of Directors of the Association.
A decision on the Bassos' request was not made until March, 1976, at which time it was denied, despite the fact that Burtoft had informed the Board that a shallow well would not affect the condominium water supply. The Board had three basic reasons, not articulated until the trial of this cause, for denying the Bassos' request:
(1) The threat of increased salinity;
(2) Staining of sidewalks and other common areas of the condominium;
(3) The proliferation of more wells by other unit owners.
The Bassos nonetheless drilled a well in early January, 1977. On January 31, 1977, Hidden Harbour brought an action for injunctive relief, alleging that the Bassos were in violation of the use restrictions of the Declaration of Condominium by drilling an unauthorized well.[1] This action resulted in the judgment now appealed.
Before addressing ourselves to the merits of the trial court's decision, we will summarize the law in regard to the enforcement of use restrictions against condominium unit owners. As we opined in Sterling Village Condominium, Inc. v. Breitenbach, 251 So.2d 685 (Fla. 4th DCA 1971):
Daily in this state thousands of citizens are investing millions of dollars in condominium property. Chapter 711, F.S.A., 1967, the Florida Condominium Act, and the Articles or Declarations of Condominiums provided for thereunder ought to be construed strictly to assure these investors that what the buyer sees the buyer gets. Every man may justly consider his *639 home his castle and himself as the king thereof; nonetheless his sovereign fiat to use his property as he pleases must yield, at least in degree, where ownership is in common or cooperation with others. The benefits of condominium living and ownership demand no less. The individual ought not be permitted to disrupt the integrity of the common scheme through his desire for change, however laudable that change might be. Id. at 688.
Breitenbach involved an attempt by a unit owner to replace a screen enclosure with glass jalousies, even though the declaration of condominium prohibited "material alterations" or "substantial additions" to the common elements of the condominium. The screened enclosures were within the areas defined as common elements. Thus, even though Breitenbach's attempt to replace the screen enclosure was certainly a reasonable one and would have doubtlessly improved their unit, we were impelled to uphold the use restrictions in order to vindicate the condominium association's interest in maintaining a uniform exterior. A similar result occurred in Pepe v. Whispering Sands Condominium Association, 351 So.2d 755 (Fla. 2nd DCA 1977), wherein the Court expressed the view that the restrictions in the declaration of condominium were of paramount importance in defining the rights and obligations of unit owners. The Court stated:
A declaration of a condominium is more than a mere contract spelling out mutual rights and obligations of the parties thereto  it assumes some of the attributes of a covenant running with the land, circumscribing the extent and limits of the enjoyment and use of real property. Stated otherwise, it spells out the true extent of the purchased, and thus granted, use interest therein. Absent consent, or an amendment of the declaration of condominium as may be provided for in such declaration, or as may be provided by statute in the absence of such a provision, this enjoyment and use cannot be impaired or diminished. (footnotes omitted) Id. at 757-758.
See also, Wilshire Condominium Association, Inc. v. Kohlbrand, 368 So.2d 629 (Fla. 4th DCA 1979).
Hidden Harbour Estates, Inc. v. Norman, 309 So.2d 180 (Fla. 4th DCA 1975) presented the question of whether a condominium association, through the exercise of its rule making powers, could prohibit the consumption of alcoholic beverages in the common areas of the condominium. In that case, we stated the "rule of reasonableness" to be the touchstone by which the validity of a condominium association's actions should be measured.
Certainly, the association is not at liberty to adopt arbitrary or capricious rules bearing no relationship to the health, happiness and enjoyment of life of the various unit owners. On the contrary, we believe the test is reasonableness. If a rule is reasonable the association can adopt it; if not, it cannot. It is not necessary that conduct be so offensive as to constitute a nuisance in order to justify regulation thereof. Of course, this means that each case must be considered upon the peculiar facts and circumstances thereto appertaining. Id. at 182.
We found that the restriction on consumption of alcoholic beverages was reasonable because it was designed to "promote the health, happiness, and peace of mind of the majority of the unit owners." Id. at 182.
There are essentially two categories of cases in which a condominium association attempts to enforce rules of restrictive uses. The first category is that dealing with the validity of restrictions found in the declaration of condominium itself. The second category of cases involves the validity of rules promulgated by the association's board of directors or the refusal of the board of directors to allow a particular use when the board is invested with the power to grant or deny a particular use.
In the first category, the restrictions are clothed with a very strong presumption of validity which arises from the fact that each individual unit owner purchases his unit knowing of and accepting the restrictions to be imposed. Such restrictions are *640 very much in the nature of covenants running with the land and they will not be invalidated absent a showing that they are wholly arbitrary in their application, in violation of public policy, or that they abrogate some fundamental constitutional right. See, White Egret Condominium, Inc. v. Franklin, 379 So.2d 346 (Fla. 1979). Thus, although case law has applied the word "reasonable" to determine whether such restrictions are valid, this is not the appropriate test, and to the extent that our decisions have been interpreted otherwise, we disagree. Indeed, a use restriction in a declaration of condominium may have a certain degree of unreasonableness to it, and yet withstand attack in the courts. If it were otherwise, a unit owner could not rely on the restrictions found in the declaration of condominium, since such restrictions would be in a potential condition of continuous flux.
The rule to be applied in the second category of cases, however, is different. In those cases where a use restriction is not mandated by the declaration of condominium per se, but is instead created by the board of directors of the condominium association, the rule of reasonableness comes into vogue. The requirement of "reasonableness" in these instances is designed to somewhat fetter the discretion of the board of directors. By imposing such a standard, the board is required to enact rules and make decisions that are reasonably related to the promotion of the health, happiness and peace of mind of the unit owners. In cases like the present one where the decision to allow a particular use is within the discretion of the board, the board must allow the use unless the use is demonstrably antagonistic to the legitimate objectives of the condominium association, i.e., the health, happiness and peace of mind of the individual unit owners.
In the instant case, Hidden Harbour has articulated three basic reasons for denying the Bassos' request for permission to drill a well. First, the Board felt that such a well would increase the level of salinity in the deeper wells owned by the Hidden Harbour Condominium Association. Secondly, the Board believed the water pumped from the Bassos' well would impose a threat of staining the sidewalks and other common areas of the condominium association. Thirdly, the Board felt that if the Bassos were allowed to drill a well, then there would be a proliferation of other wells.
These reasons for denial were in the best interest of all of the unit owners, since they were legitimate objectives which would have promoted the aesthetic appeal of the condominium development. However, in order for the Board to justify its denial of the Bassos' application to drill a well, it was necessary that the Board be able to demonstrate that its denial was reasonably related to the fulfillment of the desired and laudable objectives mentioned above. This the Board failed to do. The evidence at trial indicated that the Bassos' well had no effect on the increased salinity of the wells owned by Hidden Harbour. In fact, this was known by one of the members of the Board of Directors at the time that the Bassos applied for permission to drill a well. No discoloration of commonly owned property had occurred at the time of trial, even though the Bassos frequently used the "illicit" well for more than a year and a half. Finally, there was not a shred of evidence to support a finding that the Bassos' well precipitated a proliferation of other wells in Hidden Harbour or that a proliferation of wells would be detrimental. Simply stated, Hidden Harbour failed to demonstrate a reasonable relationship between its denial of the Bassos' application and the objectives which the denial sought to achieve.
We also note that a trial court has wide discretion in denying or granting an injunction, and an appellate court will not interfere where no abuse of discretion has been made to appear. Sadowski v. Shevin, 351 So.2d 44 (Fla. 3rd DCA 1976).
We do not hold that, as a matter of law, Hidden Harbour was not entitled to injunctive relief in a situation similar to the one presently before this court. We merely hold that under the facts of this case, as *641 demonstrated by the evidence at trial, such relief would not have been proper.
Accordingly, the judgment of the trial court is affirmed.
DOWNEY, J., concurs.
LETTS, C.J., concurs specially with opinion.
LETTS, Chief Judge, concurring specially.
I concur with the majority opinion with the additional comment that the Board's fear of a proliferation of wells, if a single one is allowed, would be justifiable as a matter of common sense. However, this comment in no way affects the failure to demonstrate any likelihood of increased salinity or staining.
Further, it goes without saying that if and when increased salinity or staining can be demonstrated, the Board will have the opportunity to return to court. Obviously on any such occasion, proliferation of wells will compound the adverse effect on the condominium property.
NOTES
[1] The complaint also alleged that the Bassos were in violation of the water use restrictions. Although the Bassos did violate these restrictions prior to drilling their own well, the "excessive" water use after the well was drilled did not violate the use restrictions since it placed no increased burden on the common supply.