FILED
COURT OF APPEALS
DIVISION II

2013 SEP 24 AM 9: 28

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| KEITH and NICHOLE KAWAWAKI, husband and wife, | No. 42982-9-II |
| Respondents, | |
| v. | |
| ACADEMY SQUARE CONDOMINIUM ASSOCIATION, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, A.C.J. — Academy Square Condominium Association ("Academy") appeals the trial court's summary judgment order in favor of Keith and Nicole Kawawaki ("the Kawawakis"). We are asked to decide whether, as a matter of law, Academy's Board of Directors ("the Board") properly amended the 2005 "Declaration of Condominium and Covenants, Conditions & Restrictions" (the Declaration), or adopted a valid rule to enforce the Declaration's condominium rental use restriction. Clerk's Papers (CP) at 8. We conclude that Academy's attempted amendment fails and although it has the authority to adopt reasonable rules that enforce the Declaration's rental use restriction, the rule here is a new use restriction that must be contained in the Declaration, or, in the alternative, it is an unreasonable house rule. Accordingly, we affirm the trial court's grant of summary judgment for the Kawawakis.

FACTS

In December 2005, the Kawawakis purchased a condominium unit from Academy Square Apartments LLC, Academy's predecessor in this case. The Kawawakis purchased the unit as a potential rental investment. At the time of the purchase, the Kawawakis were aware of the recorded 2005 Declaration, its restriction limiting rental units to 25 percent or nine of the thirty-six total units, and its waiting list provision. Before the Kawawakis purchased their unit, Academy's realtor, Diane Sines, told them that the 25 percent cap on rental units had been reached and that the Kawawakis would be placed on a waiting list to receive rental unit status. They stated that they were also told that when a rental unit sold, the Kawawakis would move off the waiting list. Within a week of their purchase, the Kawawakis made a formal request to be placed on the waiting list.

The original condominium Declaration was recorded in June 2005, and it provided in relevant part,

> Section 13. <u>Rental Units</u>. The Leasing or Renting of a Unit by its Owner shall be governed by the provisions of this Article X Section 13. No more than twenty-five [percent] (25%) of the Units may be used as rental Units at any time. *In the event an Owner desires to rent a Unit and at least twenty-five [percent] (25%) of the Units are then being used as rental Units, such Owner shall be added to a waiting list, first-come, first-served.* All Owners desiring to rent a Unit must submit an Association-approved credit and background application completed by the prospective party who desires to rent the Unit prior to entering into any rental agreement.

CP at 70 (emphasis added).

In February 2006, Sines bought rental Unit 306A. Based on the rental unit's sale, the recorded Declaration, and Sines's representations, the Kawawakis expected that they would move from the rental waiting list to actually having rental status. By April, when they were not

moved from the rental unit waiting list, the Kawawakis asked the Board to clarify the Declaration's rental restriction provision.

In February 2008, nearly two years after the Kawawakis' clarification request Academy recorded an "amendment" to the Declaration ("the House Rule"). The House Rule added the following sentence to the Declaration:

1. Article X, Section 13 shall be interpreted and applied as follows:

". . . *Any Unit that qualifies as an approved rental unit hereunder may be transferred, conveyed[,] and/or sold to a third party as a [']rental unit['] by such Unit Owner without further Board review or approval* provided such new owner provides the Association with any information otherwise required under this Declaration."

CP at 25 (emphasis added).

In June 2008, Academy sent the Kawawakis a certified letter informing them that they were in violation of the Declaration for renting their unit. In January 2009, Academy recorded a "*Notice Default/Assessment*" alleging that the Kawawakis were in default for renting their unit.

The parties filed cross motions for summary judgment and the trial court found in the Kawawakis' favor. Both parties relied on *Shorewood West Condominium Ass'n v. Sadri*, 140 Wn.2d 47, 992 P.2d 1008 (2000). Academy argued that *Shorewood* was distinguishable because Shorewood attempted to add a rental restriction after Sadri purchased the condominium without the requisite association vote, while here the Kawawakis had notice before purchase. The Kawawakis argued that the Board lacked the authority to adopt the House Rule as a purported "amendment" without a proper vote as the Declaration required. They also claim that although they had notice of the waiting list, they did not have notice that rental status stayed with the unit

3

when sold, an unreasonable interpretation of the Declaration. In the Kawawakis' view, the more reasonable interpretation is that rental status terminates when a unit is sold and thereafter passes to the first owner on the waiting list. Because they were next on the waiting list, the Kawawakis argued that their unit should receive rental status. The trial court granted summary judgment in the Kawawakis' favor and ordered Academy to confer rental status on the Kawawakis' unit, to release its lien against the Kawawakis' unit, and to pay the Kawawakis' attorney fees. Academy timely appeals.

## ANALYSIS

Academy asks us to reverse the trial court's summary judgment order in favor of the Kawawakis and, instead, to grant Academy's cross motion for summary judgment. Academy argues that the Board had the authority to create the 2008 House Rule to enforce the nine-unit, 25 percent rental restriction contained in the 2005 Declaration. The Kawawakis respond that the Board did not have authority to amend the Declaration by recording a House Rule without a membership vote, and, in the alternative, the House Rule is unreasonable. We agree that the Board improperly attempted to amend the Declaration, that the House Rule conflicts with the Declaration, that it is unreasonable and, therefore, that it is unenforceable against the Kawawakis.

### I. STANDARD OF REVIEW

Both parties acknowledge that no material facts are in dispute and that summary judgment is appropriate. When reviewing an order for summary judgment, we engage in the same inquiry as the trial court. *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). We will affirm summary judgment if no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. CR 56(c).

All facts and reasonable inferences are considered in the light most favorable to the nonmoving party, and all questions of law are reviewed de novo. *Berrocal v. Fernandez*, 155 Wn.2d 585, 590, 121 P.3d 82 (2005).

## II. THE BOARD'S AUTHORITY TO AMEND THE DECLARATION

Academy asserts that the Board had authority to adopt a House Rule to implement and monitor the 25 percent rental cap, provided that the rule did not conflict with the Declaration or our Condominium Act, ch. 64.34 RCW. Academy ignores the fact, however, that the Board first attempted to improperly amend the Declaration. The Kawawakis correctly argue that the Board, without a vote of 67 percent of the owners, did not have authority to amend the Declaration by recording the House Rule. We agree with the Kawawakis that the House Rule was not a proper amendment of the Declaration.

Under the Condominium Act, the condominium declaration must contain "[a]ny restrictions . . . on use, occupancy, or alienation of the units." RCW 64.34.216(1)(n). RCW 64.34.200 requires the recording of the condominium declaration to ensure that prospective purchasers in condominium communities are put on notice of deed restrictions. In this case, under the Declaration's article XX, section 1, the Declaration may be amended only by vote or agreement of 67 percent of the Academy Square Condominium unit owners.

In *Shorewood*, our Supreme Court held that a restriction on leasing condominium units is a restriction on use under the Horizontal Property Regimes Act, ch. 64.32 RCW, the predecessor

to the Condominium Act.[1] 140 Wn.2d at 49. Here, the Declaration's article X, section 13 contained a 25 percent cap on authorized rental units and created the rental waiting list. This is clearly a properly recorded use restriction. Pursuant to article XX, section 1 of the Declaration, it may be amended only by vote or agreement of 67 percent of the Academy Square Condominium unit owners. Here, no vote of the owners was taken and agreement of 67 percent of the unit owners was not sought before adopting the purported amendment to the Declaration. Therefore, we agree with the Kawawakis that although the Academy recorded a purported amendment to the Declaration in February 2008, it is clear that there was no 67 percent vote of the owners, and, thus, no amendment to the Declaration.

Even if we ignore the fact that Academy improperly attempted to amend the Declaration, and even if we consider the attempted amendment to be a mere house rule instead, Academy's arguments still fail.

### III. THE BOARD'S AUTHORITY TO ADOPT THE HOUSE RULE

The Kawawakis argue that the House Rule changed the permitted condominium units' uses, bringing the rule in conflict with RCW 64.34.216 and .264(4). They argue that creating a waiting list and rental status for some units and not other units is "tantamount" to a restriction on use that must be accomplished by amending the Declaration and may not be contained in a House Rule. Academy asserts that the House Rule merely contains specifics that allow the

---

[1] Condominiums are a creation of statute and are, therefore, governed not exclusively by common law real property principles but by statute. The Horizontal Property Regimes Act applies to all condominiums built through July 1, 1990. *Shorewood*, 140 Wn.2d at 52. Its successor, the Condominium Act, applies to condominiums built after July 1, 1990. *Shorewood*, 140 Wn.2d at 52. Thus, *Shorewood* was decided under the Horizontal Property Regimes Act while the Condominium Act applies here. But it is logical and consistent for us to follow the *Shorewood* court's position on what constitutes a use restriction.

Board to enforce the Declaration's use restriction on rentals, of which the Kawawakis had sufficient notice. We agree with the Kawawakis.

Condominium associations have the authority to "[a]dopt and amend bylaws, rules, and regulations" that do not conflict with the Declaration or the Condominium Act. RCW 64.34.304(1)(a);[2] *see also Shorewood*, 140 Wn.2d at 49.

The Supreme Court, in *Shorewood*, explicitly rejected Academy's argument that "[t]he declaration is supposed to contain only the general outline of prohibitions with the specific prohibitions being contained in the bylaws and rules and regulations." *Shorewood*, 140 Wn.2d at 55. The Supreme Court found, instead, that the general rule in other jurisdictions is to include "specific restrictions, not merely restrictions on broad use categories" in the declaration and that the term "use" in the Horizontal Property Regimes Act means that "all restrictions on use should be in the declaration's statement of purpose." *Shorewood*, 140 Wn.2d at 56.

For example, the Declaration may include only the plan's general outline to keep the common areas clean. The Board would, therefore, be properly exercising its authority by making a schedule assigning certain maintenance tasks to the residents on a rotating basis. The Declaration may not, however, include only the plan's general outline to restrict the residents' use of their condominiums, permitting the Board to provide the details of the restriction in an implementation rule adopted later. Prospective buyers must have more detailed notice of use restrictions at the time of purchase and permitting the Board to implement the restrictions later is not permitted by *Shorewood*. *See* 140 Wn.2d at 56-57.

---

[2] The legislature amended RCW 64.34.304 in 2008, but the amendment has no effect on this case.

Here, it is undisputed that the 2005 Declaration restricted the rental unit number to 25 percent of the total condominium units and that it created the waiting list. However, the 2008 House Rule attempts to change the restriction by allowing rental status to follow the sold rental unit when, in contrast, the Declaration provided for a "first-come, first-served" rental waiting list. As a result of the House Rule, a new purchaser of a rental unit bypasses the rental waiting list to rent the unit immediately while a prior owner of a nonrental unit must wait on a waiting list.

In our view, the House Rule created a new use restriction that must be included in the Declaration to be valid. Because this restriction was not contained in the Declaration and the Declaration was not properly amended, the Kawawakis did not have sufficient notice of this new restriction when they purchased their unit. Accordingly, the House Rule is invalid. *See Shorewood*, 140 Wn.2d at 49; RCW 64.34.216(1)(n).

In addition to creating a new use restriction, the House Rule conflicts with the Declaration because it permits new owners of previously rented units to bypass the waiting list. The Declaration provides that once the 25 percent limit on rental units is reached, an owner who wants to rent his unit will be placed on a waiting list "first-come, first-served." CP at 11. In contrast, the House Rule provides instead that a new owner of a rental unit may rent his unit immediately, bypassing the rental waiting list. This gives little meaning to the "first-come, first-served" language in the Declaration. The House Rule therefore conflicts with the Declaration and, under *Shorewood*, the House Rule is invalid. 140 Wn.2d at 57.

IV. REASONABLENESS OF THE DECLARATION'S RENTAL USE RESTRICTION AND THE HOUSE RULE

Even assuming that the House Rule did not conflict with the Declaration, Academy's final argument still fails. Academy argues that the House Rule was reasonable as a mechanism

for implementing article X, section 13 of the Declaration. The Kawawakis reply that the Board's interpretation of the Declaration and the House Rule is unreasonable and therefore unenforceable against the Kawawakis. We agree with the Kawawakis that the House Rule, as adopted by the Board, is unreasonable and unenforceable against the Kawawakis.

The Supreme Court has declined to adopt a standard of review for condominium association rules. *Shorewood*, 140 Wn.2d at 49-50. However, in *Shorewood*, we applied a reasonableness test to a similar condominium association rule that prohibited leasing entirely. *Shorewood West Condo. Ass'n v. Sadri*, 92 Wn. App. 752, 759, 966 P.2d 372 (1998),[3] *rev'd on other grounds by Shorewood*, 140 Wn.2d at 49 (declining to address the question of a standard of review for condominium house rules).

Reasonableness of a house rule is a two-pronged analysis. *Sadri*, 92 Wn. App. at 757-58 (citing *Bd. of Dirs. of 175 E. Delaware Place Homeowners Ass'n v. Hinojosa*, 287 Ill. App. 3d 886, 679 N.E.2d 407 (1997)). We must first consider whether the House Rule here, dictating that rental status runs with the unit and not with the owner, is reasonable in purpose and then we must determine whether it is reasonable in application. *Sadri*, 92 Wn. App. at 758. A house rule has a reasonable purpose when it is one that is "'reasonably related to the promotion of the health, happiness[,] and peace of mind of the unit owners.'" *Sadri*, 92 Wn. App. at 757 (quoting *Hidden Harbour Estates, Inc. v. Basso*, 393 So. 2d 637, 640 (Fla. Dist. Ct. App. 1981)). To be reasonable in application, a house rule must not be selectively enforced. *Sadri*, 92 Wn. App. at 761. "Uniform application . . . should weigh heavily in applying the reasonableness test." *Sadri*, 92 Wn. App. at 761 (quoting *Ridgely Condo Ass'n v. Smyrnioudis*, 105 Md. App. 404, 660 A.2d 942, 951 (Md. Ct. Spec. App. 1995), *aff'd*, 681 A.2d 494 (Md. 1996)).

---

[3] To avoid confusion, we refer to our opinion as *Sadri*.

After the House Rule was adopted, the Board sent an e-mail to the Kawawakis indicating that the rule's purpose was to enforce rental unit ratios so that buyers could get favorable financing. We agree that the Declaration's rental use restriction's purpose is to help secure more favorable financing because lenders prefer owner-occupied mortgage loans. But the House Rule's purpose is not so clear.

In February 2006, Sines, the realtor for Academy and a member of the Board, purchased rental Unit 306A and, bypassing the waiting list, continued to use it as a rental unit. After more than a year on the rental waiting list and after Sines bought rental Unit 306A, the Kawawakis asked for clarification of the rental status policy. The House Rule was recorded in February 2008, apparently in response to the Kawawakis' concerns. Other than protecting the value of the original nine rental units and allowing purchasers of rental units to bypass the waiting list, the House Rule has no other discernible or articulated purpose. Academy has made no attempt to identify any additional purpose for the House Rule other than to say it was to help monitor the Declaration's provision for securing favorable financing and that it seeks to keep property values high because buyers desire to live in an owner-occupied community. But even before the House Rule was adopted, the Declaration limited the number of units that could be used as rentals. After the House Rule, the same limit on the number of rental units existed. Academy does not explain, and we fail to see, how the House Rule helped to secure favorable financing. Academy also did not provide any evidence that the House Rule, rather than the Declaration's rental restriction served to keep property values high or that without the House Rule, buyers would be deterred.

The House Rule, therefore, is not consistent with improving the health, happiness, and peace of mind of the majority of Academy's residents because the facts indicate that its purpose was only to protect the value of the original nine rental units for the benefit of the original nine owners and to ratify the actions of Sines, a Board member who bought a rental unit and bypassed the waiting list. The rule is therefore not reasonable in purpose.

Finally, we examine the second prong in the *Sadri* analysis and determine whether the House Rule is reasonable in application. *Sadri*, 92 Wn. App. at 758. We determine that it is not. The House Rule is unreasonable in application because it denies those on the waiting list their expected rental investment opportunity yet allows new purchasers of rental units to immediately benefit from their investment. According to the Kawawakis, an owner from the waiting list is unlikely to ever achieve rental status because sellers and purchasers have no financial or other incentive to remove rental status from their unit. This argument is supported by the fact that, at the time of the summary judgment motion hearing, the Kawawakis had been on the waiting list for nearly six years. We find this argument to be persuasive. As a result of the House Rule, only the original 25 percent of the rental unit owners can sell their units to new purchasers as rental units. The effect of the House Rule is, as the Kawawakis argue, to create two classes of owners. Those in the 25 percent who will retain rental status and who can realize an additional benefit when selling to new investors and the other 75 percent of owners who will remain on the so-called "first-come, first-served" waiting list. Accordingly, the House Rule is not uniformly applied and is not reasonable in application. *See Sadri*, 92 Wn. App. at 761.

Academy argues that because the rental restriction and waiting list was in the Declaration, the Kawawakis had notice. It contends further that notice in the Declaration means that the House Rule should be given greater deference. We disagree because the House Rule creating the new use restriction was adopted well after Kawawakis' purchase and therefore they were denied the required notice. Following our analysis in *Sadri*, we agree with the trial court that the House Rule is unreasonable because it is (1) contrary to the promotion of the health, happiness, and peace of mind of the unit owners and (2) is not uniformly applied. Therefore, it is unenforceable and we affirm summary judgment for the Kawawakis.

## ATTORNEY FEES

RAP 18.1 provides for attorney fees and costs on appeal if "applicable law grants to a party the right to recover" and the fees and costs are properly requested in the parties' opening briefs. RAP 18.1(a)-(b). Article XXI, section 8 of the Declaration states that "[a] party substantially prevailing in the arbitration or litigation and all appeals shall also be entitled to recover such amounts for its costs and attorneys fees incurred in connection with the arbitration as shall be determined reasonable by the arbitrator or court." CP at 123. Here, the Kawawakis base their request for attorney fees on RAP 18.1(a) and the Declaration and they included this request in their opening brief.[4] Our decision in this case is focused on the significance and application of the Declaration. Accordingly, pursuant to the Declaration, we award reasonable attorney fees to the Kawawakis as the prevailing party. *See Gold Creek N. Ltd. P'ship v. Gold Creek Umbrella Ass'n*, 143 Wn. App. 191, 206, 177 P.3d 201 (2008).

---

[4] In their brief, the Kawawakis incorrectly state that article XI, section 9 of the Declaration provides for recovery of attorney fees. Although neither article XI nor article XXI is in the record before this court, both the Kawawakis and Academy used an identical quote from article XXI in motions that *are* in the record.

No. 42982-9-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, A.C.J.

We concur:

QUINN-BRINTNALL, J.

FEARING, J.