IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 14, 2023 Session

**KURT M. CHAMBLESS ET AL. v. TERRY L. RUTLEDGE ET AL.**

**Appeal from the Circuit Court for Hamilton County**
**No. 21C473        Kyle E. Hedrick, Judge**

_____

**No. E2023-00173-COA-R3-CV**

_____

The parties are all of the owners of four neighboring lots in a small, exclusive residential development. Each lot is subject to restrictive covenants. Kurt M. Chambless and Jill S. Chambless originally filed suit against Terry L. Rutledge and Cynthia L. Rutledge, averring that the Rutledges were violating the restrictive covenants. While the Chamblesses' suit was pending, all of the lot owners (other than the Chamblesses) voted to amend the restrictive covenants. The Chamblesses amended their suit to seek a declaratory judgment invalidating the amended covenants and seeking a refund of certain monies they paid to Mr. Rutledge for the benefit of the homeowners' association.[1] Each of the defendants filed a motion to dismiss the Chamblesses' declaratory judgment claim due to their failure to state a claim upon which relief could be granted. The trial court granted the motions to dismiss, in part, and ruled that the amended covenants were valid and enforceable. The Chamblesses timely appealed to this Court. Upon careful review, we find that the trial court erred in granting the motions to dismiss for failure to state a claim after determining that the amended covenants are valid and enforceable. Accordingly, we vacate the trial court's dismissal of those parts of the Amended Complaint challenging the validity of the amended covenants, and we affirm that portion of the trial court's order declaring that the amended covenants are valid and enforceable. Further, we affirm the trial court's dismissal of the declaratory judgment claim against the Maxwells and the Dotys arising out of Mr. Rutledge's use of association funds but decline to award the Maxwells and the Dotys their attorneys' fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Vacated in Part; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

_____

[1] It appears to this Court that the parties constitute an unincorporated homeowners' association as defined by Tennessee Code Annotated section 66-27-701(5).

Steven M. Jacoway and Bryson A. Lype, Chattanooga, Tennessee, for the appellants, Kurt M. Chambless and Jill S. Chambless.

Stephen D. Barham and Isiah C. Robinson, Chattanooga, Tennessee, for the appellees, Robert Maxwell and Kelly Maxwell.

Scott M. Shaw, Chattanooga, Tennessee, for the appellees, Jesse Doty and Cristin Doty.

John P. Konvalinka and Cody M. Roebuck, Chattanooga, Tennessee, for the appellees, Terry L. Rutledge and Cynthia L. Rutledge.

## OPINION

## I. Background

In 1991, the Chamblesses and the Rutledges purchased neighboring lots in a small, exclusive development in Chattanooga. The development has only four lots, the other two of which are owned by Jesse Doty and Cristin Doty and Robert Maxwell and Kelly Maxwell (the Rutledges, the Dotys, and the Maxwells collectively, the "Defendants"; the Defendants and the Chamblesses collectively, the "Owners"). Each of the lots was subject to extensive restrictive covenants. Relevant to this appeal, the original covenants provided:

> (k) . . . All retaining walls shall be of stone or brick finish. . . .
>
> * * *
>
> (v) The majority of the trees may not be removed from any lot except in the area of the lot upon which the house and driveway are to be constructed. Excessive removal of trees will be deemed to be a nuisance to the adjoining neighbors and will mar the beauty of the subdivision.
>
> * * *
>
> [These covenants shall be binding] unless, by action of a minimum of sixty-six and two-thirds per cent (66-2/3%) of the then owners of the lots, it is agreed to change said covenants in whole or in part; provided, further, that the instrument evidencing such action must be in writing and shall be duly recorded in the Register's Office of Hamilton County, Tennessee. . . .

The Chamblesses built a home on their lot shortly after purchasing it in 1991. The Rutledges followed suit approximately ten years later. The Chamblesses' and Rutledges' homes were positioned on their respective lots such that they were relatively close to one

another but separated by a stand of mature trees located on the Rutledge lot. In 2019, the Rutledges began performing substantial renovations that included the expansion of their driveway and the construction of a large concrete retaining wall along the boundary line between the Chamblesses' and the Rutledges' lots. To accommodate these renovations, the Rutledges clear cut a large number of the trees between the Rutledge home and the Chambless home. The Chamblesses requested that the Rutledges finish the retaining wall in stone or brick, landscape that portion of the Rutledge property from which the mature trees had been removed, and correct storm water runoff and drainage issues, which were purportedly caused by the Rutledges' removal of the mature trees. The Rutledges refused to re-finish the retaining wall and did not landscape their lot to the Chamblesses' satisfaction.

Relations between the Chamblesses and the Rutledges began to deteriorate, and things came to a head in the spring of 2021 when the Dotys were constructing a home on their lot. On March 13, 2021, Mr. Doty emailed the other Owners to inquire whether they would consider updating the covenants "not [to be] adversarial or restrictive to each of [the] current owners, but [to] protect [their] interests and investments in the future as the plots turnover [*sic*] to new owners." Mrs. Chambless replied; however, her reply email is not included in the record. Mr. Maxwell and Mr. Rutledge each replied that they would be in favor of revising the covenants. Mr. Rutledge made a motion that the Owners adopt his proposed procedure set forth therein for each of the Owners to submit, and ultimately vote on, their suggested revisions to the covenants. He also moved that they "solicit[] the aid/council of an appropriate attorney to perform the legal revision and recording of the amended restrictive covenants with the county as required." Finally, he stated: "A vote for this motion will also include approving a special assessment of all lot owners to cover these fees." The Chamblesses paid such special assessment to Mr. Rutledge.

On March 16, 2021, Mr. Rutledge proposed that the other Owners send him their suggested revisions by March 26. On March 26, a draft of the amended covenants was prepared that incorporated the suggestions of the Defendants.[2] Mr. Rutledge then emailed this draft to all of the other Owners. The Chamblesses hired an attorney to review this draft and, on April 29, the Chamblesses' attorney sent a redlined version containing suggested revisions to the attorney whom the Rutledges had hired to assist the Owners with "the legal revision and recording of the amended restrictive covenants" (the "Owners' attorney"). On May 7, Mr. Rutledge emailed the other Owners a second draft of the amended covenants including suggestions from the Chamblesses' attorney and the Owners' attorney but noting that "not all suggestions from everyone [were] included in this revised draft." On June 2, 2021, a vote was held to determine whether the Owners would adopt the May 7 draft of the amended covenants circulated by Mr. Rutledge. The Defendants each voted in favor of adopting that version of the amended covenants. The Chamblesses voted no. The amended

---

[2] The Chamblesses did not send any proposed revisions to Mr. Rutledge before March 26.

covenants were signed and recorded by the Defendants. As relevant to this appeal, the amended covenants removed the requirement that all retaining walls be finished with stone or brick and removed the prohibition against excessive tree removal.

On May 17, 2021, prior to the adoption of the amended covenants, the Chamblesses filed suit against the Rutledges in the Hamilton County Circuit Court (the "trial court"). The Chamblesses averred that the Rutledges were in breach of the original covenants and that the Chamblesses had been damaged by such breach. They sought a judgment for damages and a permanent injunction requiring the Rutledges to comply with the original covenants by finishing their retaining wall in stone or brick, replanting the trees removed from the Rutledge lot, and correcting purported storm water drainage issues caused by the tree removal from the Rutledge lot. The Rutledges were originally represented by the Owners' attorney in this action. That attorney withdrew from representation of the Rutledges following the trial court's denial of a motion filed by the Chamblesses seeking to disqualify him from such representation.

On July 22, 2022, the Chamblesses filed an Amended Complaint, having obtained leave to do so from the trial court. The Amended Complaint added the Maxwells and the Dotys as defendants and sought a declaratory judgment regarding:

(a) Whether the actions of the Defendants in amending the covenants "to cure existing violations of the Original Restrictive Covenants [were] improper;"
(b) Whether the actions of the Defendants, in purportedly failing to follow the procedure specifically set forth by Mr. Rutledge for amending the covenants, "deem the [amended covenants] invalid;"
(c) Whether the amended covenants "are arbitrary and capricious or otherwise against public policy because of among other things (1) their failure to serve a useful purpose[,] (2) mistake of fact, (3) they are based on material misrepresentations made or (4) were adopted in bad faith and/or with intent to harm [the] Chambless[es];"
(d) Whether the original covenants were still valid as a result of the purported invalidity of the amended covenants;
(f) [*sic*] Whether the actions of Mr. Rutledge in hiring and paying the Owners' attorney without the authority of the Chamblesses were improper; and
(g) Whether the Chamblesses were responsible for payment of the Owners' attorney's fees incurred by Mr. Rutledge "and/or the 'Association'" and if not, whether the Chamblesses should be reimbursed for the payment of such attorney's fees.

The Chamblesses also averred that the Rutledges' actions in removing the mature trees and constructing a concrete retaining wall that was not finished in stone or brick breached the original covenants and created a nuisance to the Chamblesses; that the Rutledges breached

the inherent covenant of good faith and fair dealing by breaching the original covenants and "by attempting to amend the [original covenants] in bad faith and with an intent to cause harm to [the] Chambless[es;]" that, at the time the covenants were being amended, Mr. Rutledge "was the individual responsible for management of the neighborhood funds or 'Association' funds collected from all [of the Owners] to be used solely for the maintenance and repair of the common grounds[;]" that "[Mr.] Rutledge and the neighbors had a fiduciary relationship whereby [Mr.] Rutledge exercised dominion and control over the 'Association' common funds[;]" and, finally, that Mr. Rutledge's "engaging an attorney to represent the 'Association' and/or [Mr.] Rutledge without the express approval of [the] Chambless[es] and paying that attorney with community funds, which included funds of [the] Chambless[es], was a breach of his fiduciary duty" and "resulted in a conversion of those funds." The Chamblesses sought a judgment declaring the amended covenants to be invalid, a judgment for damages, the same permanent injunction sought in the original complaint, and a judgment requiring Mr. Rutledge to reimburse the Chamblesses for the amounts paid by the Chamblesses "towards [the Rutledges'] or the 'Association's' attorneys' fees[.]"

The Maxwells and the Dotys filed motions to dismiss the Amended Complaint pursuant to Tennessee Rule of Civil Procedure 12.02(6). They argued that the portion of the Chamblesses' declaratory judgment claim seeking to invalidate the amended covenants should be dismissed due to a failure to state a claim upon which relief could be granted. As to the portion of the declaratory judgment claim dealing with Mr. Rutledge's use of the association funds to hire and pay the Owners' attorney, the Maxwells and the Dotys each filed an additional motion to dismiss arguing that they did not have or claim any interest that would be affected by a declaratory judgment on that issue.

The Rutledges also filed a motion to dismiss the Amended Complaint pursuant to Rule 12.02(1) and (6). Like the Maxwells and the Dotys, they argued that the Chamblesses failed to state a claim upon which relief could be granted. They also argued that the trial court lacked subject matter jurisdiction to enter the requested injunction because the original covenants had been amended and superseded, and the Rutledges could no longer be compelled to comply with the original covenants.

Following a hearing on the motions to dismiss, the trial court entered an order granting the Maxwells' and the Dotys' motions. The trial court also granted the Rutledges' motion with regard to the declaratory judgment claim seeking to invalidate the amended covenants and the requested injunction. The trial court denied the Rutledges' motion as to the causes of action for breach of contract and breach of the covenant of good faith and fair dealing. Specifically, the trial court found that the amended covenants are "valid and enforceable" because they are "the written agreement of 75% of the property owners" and were recorded with the Register's Office, thus meeting the requirements for amendments set forth by the original covenants. Accordingly, the trial court found that the Amended

Complaint "lacks sufficient allegations to articulate a claim for a judgment declaring that the [amended covenants] are arbitrary, capricious and invalid." The trial court also found that the Chamblesses' request for an injunction is moot because the trial court lacked the subject matter jurisdiction necessary to enjoin the Rutledges to comply with the original covenants once they were superseded by the amended covenants. Pursuant to Tennessee Code Annotated section 20-12-119, the trial court awarded the Defendants their costs and reasonable attorney's fees incurred in the trial court proceedings "as a consequence of the dismissal of the claims and requests for relief dismissed" in the trial court's order. Although the trial court's order did not dispose of all of the claims against all of the parties, the trial court expressly determined that there was no just reason for delay and directed that the order be entered as a final judgment pursuant to Tennessee Rule of Civil Procedure 54.02. This timely appeal followed.

## II. Issues

The Chamblesses present two issues on appeal, which we restate slightly:

1. Whether the trial court erred in ruling that the Chamblesses did not sufficiently state a claim that the amendments are invalid under the arbitrary and capricious standard.

2. Whether the trial court erred in dismissing the Maxwells and the Dotys from the declaratory judgment claim regarding Mr. Rutledge's hiring and payment of the Owners' attorney when Mr. Rutledge used the Maxwells' and the Dotys' money in addition to the Chamblesses' money.

In their jointly filed brief, the Maxwells and the Dotys raise a third issue:

3. Whether the Maxwells and the Dotys are entitled to an award of their reasonable attorney's fees for defending this appeal.

## III. Analysis

*A.*

"Our standard of review on appeal from a trial court's grant of a motion to dismiss is *de novo*, with no presumption of correctness as to the trial court's legal conclusions, and all allegations of fact in the complaint below are taken as true." *Brown v. Ogle*, 46 S.W.3d 721, 726 (Tenn. Ct. App. 2000) (citing *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997)). A trial court's judgment of dismissal is entitled to be affirmed so long as the trial court reaches the correct result "irrespective of the reasons stated." *Clark v. Metro. Gov't of Nashville and Davidson Cnty.*, 827 S.W.2d 312, 317 (Tenn. Ct. App. 1991) (citing *Benson v. U.S. Steel Corp.*, 465 S.W.2d 124 (Tenn. 1971)). *See* Tenn. R. App. P. 36(b)

("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.").

Regarding motions to dismiss declaratory judgment actions, this Court has previously held that motions to dismiss pursuant to Rule 12.02(6)

> are rarely appropriate in declaratory judgment actions. *See Glover v. Glendening*, 376 Md. 142, 829 A.2d 532, 539 (2003). The prevailing rule is that when a party seeking a declaratory judgment alleges facts demonstrating the existence of an actual controversy concerning a matter covered by the declaratory judgment statute, the court should not grant a Tenn. R. Civ. P. 12.02(6) motion to dismiss but, instead, proceed to render a declaratory judgment as the facts and law require. *Hudson v. Jones*, 278 S.W.2d 799, 804 (Mo. Ct. App. 1955); 1 WALTER H. ANDERSON, ACTIONS FOR DECLARATORY JUDGMENTS § 318, at 740 (2d ed.1951).

*Cannon Cnty. Bd. of Educ. v. Wade*, 178 S.W.3d 725, 730 (Tenn. Ct. App. 2005). Regardless, this Court has repeatedly affirmed dismissals of declaratory judgment actions following a Rule 12.02(6) motion to dismiss, when the trial court erred in granting the motion to dismiss itself but also addressed the merits of the declaratory judgment claim in its ruling. Stated differently, although disposing of a declaratory judgment action on a Rule 12.02(6) motion is disfavored, our prevailing approach has been to deem it harmless error if the trial court *also* rules on the merits of the declaratory judgment action. *See e.g.*, *Remus v. Nunn*, No. M2023-00589-COA-R3-CV, 2024 WL 1298975, at **4, 11 (Tenn. Ct. App. Mar. 27, 2024) (concluding that the trial court erred in granting defendant's Rule 12.02(6) motion to dismiss but affirming the trial court's ruling on the merits); *Parsley v. City of Manchester*, No. M2021-00200-COA-R3-CV, 2021 WL 6139210, at **4–5 , 7 (Tenn. Ct. App. Dec. 29, 2021) (concluding that a dismissal under Rule 12.02(6) was harmless error and affirming the trial court's ruling on the merits); *Karsonovich v. Kempe*, No. M2017-01052-COA-R3-CV, 2018 WL 1091735, at **2–3, 5 (Tenn. Ct. App. Feb. 27, 2018) (concluding that defendant's Rule 12.02(6) motion to dismiss "should have been denied" but affirming the trial court's ruling on the merits); *Crockett v. Mut. of Omaha*, No. M2014-01038-COA-R3-CV, 2015 WL 4656533, at *4–5 (Tenn. Ct. App. July 30, 2015) (affirming trial court's dismissal pursuant to Rule 12.02(6) after concluding that a declaratory judgment would be "purely theoretical" due to plaintiff's failure to allege damages as required by the relevant statute); *Highwoods Props., Inc. v. City of Memphis*, No. W2007-00454-COA-R3-CV, 2007 WL 4170821, at *14–15 (Tenn. Ct. App. Nov. 27, 2007), *aff'd*, 297 S.W.3d 695 (Tenn. 2009) (collecting cases) (affirming trial court's dismissal pursuant to Rule 12.02(6) after concluding that plaintiff's constitutional challenge to an annexation ordinance was meritless). Furthermore, the *Wade* Court

recognized that "there may be exceptions to this principle" that "a party seeking a declaratory judgment is not required to allege facts in its complaint demonstrating that it is entitled to a favorable decision" but declined to articulate what those exceptions may be. *Wade*, 178 S.W.3d at 730 n.5.

"Generally, in order to preserve judicial resources, we prefer to rule on the merits of the case." *Karsonovich*, 2018 WL 1091735, at *3 (citing *Blackwell v. Haslam*, No. M2011-00588-COA-R3-CV, 2012 WL 113655, at *10 (Tenn. Ct. App. Jan. 11, 2012)). This Court declined to rule on the merits of the case in *Blackwell*, concluding:

> If we decided the issues without remand, *our decision would not infringe upon the rights of any party provided we affirmed the trial court in all respects*. If, however, we were to disagree with the trial court, in whole or in part, concerning any of the constitutional grounds and rule in favor of Petitioner, the State would have every reason to complain. This is because the State has not filed an Answer to the Complaint, a fact that is acknowledged by Petitioner in his reply brief. Moreover, we cannot rule out the possibility that additional facts may need to be considered if the case is to be decided on the merits.

*Blackwell*, 2012 WL 113655, at *10 (emphasis added) (internal footnote omitted). Like *Karsonovich*, this case is distinguishable from *Blackwell* "because [all of the] parties briefed the [substantive] issues and there does not appear to be a need for any additional facts." *Karsonovich*, 2018 WL 1091735, at *3. Additionally, because we ultimately affirm the trial court, our decision does not infringe upon the rights of any party.[3]

Upon careful review, we determine that the Amended Complaint sufficiently alleged facts demonstrating the existence of an actual controversy contemplated by the declaratory judgment statute with regard to the validity of the amended covenants. Therefore, the trial court erred in dismissing that part of the Chamblesses' declaratory judgment action pursuant to Rule 12.02(6). We therefore vacate the portion of the trial court's order dismissing the declaratory judgment action challenging the validity of the amended covenants for failure to state a claim upon which relief can be granted. We also vacate the trial court's award to the Defendants of their costs and attorney's fees incurred in the trial court proceedings pursuant to Tennessee Code Annotated section 20-12-119 to the extent that award is based upon the dismissal of that part of the declaratory judgment action challenging the validity of the amended covenants.[4] However, despite the

---

[3] We also note that, although the Chamblesses rely on *Wade* to argue that this Court should reverse the trial court's dismissal of its declaratory judgment claim, they failed to raise this argument before the trial court and only make such argument for the first time on appeal.

[4] Section 20-12-119(c) provides, in relevant part:

procedural error in granting the motions to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6), as discussed further below, we find that the trial court nonetheless ultimately accomplished the correct result in its consideration of the validity of the amended covenants. For this reason, we affirm that portion of the trial court's order.[5]

## B.

"Tennessee law does not favor restrictive covenants, because they are in derogation of the rights of free use and enjoyment of property." *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 474–75 (Tenn. 2012) (citing *Williams v. Fox*, 219 S.W.3d 319, 324 (Tenn. 2007); *Arthur v. Lake Tansi Vill., Inc.*, 590 S.W.2d 923, 927 (Tenn. 1979)). Despite this, parties are "free to purchase property subject to restrictive covenants[.]" *Pandharipande v. FSD Corp.*, 679 S.W.3d 610, 629 (Tenn. 2023). As our Supreme Court has explained:

> . . . When a purchaser buys into such a community, the purchaser buys not only subject to the express covenants in the declaration, but also subject to the amendment provisions of the declaration. [Stewart E.] Sterk, [*Minority Protection in Residential Private Governments*,] 77 B.U. L.Rev. [273,] 282 [(1997) ("Sterk")]. And, of course, a potential homeowner concerned about community association governance has the option to purchase a home not subject to association governance. Sterk, 77 B.U. L.Rev. at 301. As one commentator has noted, people who live in private developments "are not just opting for private ordering in the form of covenants, but also are opting for a privatized form of collective decision making that can undo, replace, modify, or augment the private ordering already achieved." [Lee Anne] Fennell, [*Contracting Communities*,] 2004 U. Ill. L.Rev. [829,] 848 [(2004)].

---

[I]n a civil proceeding, where a trial court grants a motion to dismiss pursuant to Rule 12 of the Tennessee Rules of Civil Procedure for failure to state a claim upon which relief may be granted, the court shall award the party or parties against whom the dismissed claims were pending at the time the successful motion to dismiss was granted the costs and reasonable and necessary attorney's fees incurred in the proceedings as a consequence of the dismissed claims by that party or parties.

Because we now vacate that portion of the trial court's order dismissing the Chamblesses' declaratory judgment action challenging the validity of the amended covenants pursuant to Rule 12 for failure to state a claim upon which relief can be granted, we also vacate that portion of the trial court's order awarding the Defendants their costs and attorney's fees pursuant to this statute.

[5] Where the trial court "reaches the correct result [even if] for the wrong reason[,] we will affirm." *Torres v. Bridgestone/Firestone N. Am. Tire, LLC*, 498 S.W.3d 565, 577 (Tenn. Ct. App. 2016) (quoting *Arnold v. City of Chattanooga*, 19 S.W.3d 779, 789 (Tenn. Ct. App. 1999)).

. . . We acknowledge that a homeowner's Lockean exchange of personal rights for the advantages afforded by private residential communities does not operate to wholly preclude judicial review of the majority's decision. However, because of the respect Tennessee law affords private contracting parties, we are reticent to inject the courts too deeply into the affairs of a majoritarian association that parties freely choose to enter.

*Hughes*, 387 S.W.3d at 476 (internal footnotes omitted). "As one commentator has queried, 'The scope of association power may not be unlimited, but how do we decide what that scope is? Why are courts better situated to make that decision than the majority of homeowners as represented by their association?'" *Id.* at 476 n.19 (quoting Sterk, 77 B.U. L.Rev. at 287). Therefore, "[w]here, as here, members of a homeowners' association adopt an amendment, the amendment is presumed valid and the party arguing against the amendment's validity carries the burden of showing that the amendment was arbitrary and capricious." *Pandharipande*, 679 S.W.3d at 630 (citing *Hughes*, 387 S.W.3d at 478). "[T]he arbitrary and capricious standard requires the reviewing court to determine whether there has been a clear error in judgment." *Hughes*, 387 S.W.3d at 479 (citing *Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 110–11 (Tenn. Ct. App. 1993)). "An arbitrary or capricious decision is one that is not based on any course of reasoning or exercise of judgment, or one that disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." *Id.* at 479–80 (citing *Miller v. Civ. Serv. Comm'n of Metro. Gov't of Nashville & Davidson Cnty.*, 271 S.W.3d 659, 665 (Tenn. Ct. App. 2008)).

The Amended Complaint avers that the amended covenants "are arbitrary and capricious or otherwise against public policy because of among other things (1) their failure to serve a useful purpose[,] (2) mistake of fact, (3) they are based on material misrepresentations made or (4) were adopted in bad faith and/or with intent to harm [the] Chambless[es]." More specifically, in their brief filed with this Court, the Chamblesses argue that the amended covenants are arbitrary and capricious because:

- The Rutledges initiated the amendment process after they breached the [original] covenants by constructing a non-conforming retaining wall and clearcutting trees.
- The Defendants eschewed the procedure the [Owners] adopted, and [Mr.] Rutledge pitted the Chamblesses against everyone else.
- The [Defendants'] original version of the amendment[s] included language prohibiting both the exterior finish of the Chamblesses' home and their boathouse.
- [Mr.] Rutledge was angry at [Mrs.] Chambless, referred to her as the "neighborhood police" to the Maxwells and [the] Dotys, and acted in retaliation against her.

- 10 -

- [Mr.] Rutledge made false statements to the Maxwells and [the] Dotys regarding the Chamblesses' home.
- The Rutledges had a conflict of interest in proposing and voting on revisions that sought to retroactively negate their breach of the original covenants.
- The [Defendants] communicated about the amendment process behind the Chamblesses' back and discussed how they would orchestrate the final stages of the process to create the appearance of good faith.

Ultimately, even when taken as true, these averments do not support a conclusion that the amended covenants are arbitrary and capricious.

The Chamblesses argue that this case is similar to *Cohen v. Kite Hill Cmty. Ass'n*, 191 Cal. Rptr. 209 (Cal. Ct. App. 1983), in which the California Court of Appeals reversed a trial court's dismissal of a complaint challenging the action of a community association's architectural committee. We are unpersuaded. The plaintiffs in *Cohen* sought to block their neighbors from constructing a fence that the plaintiffs believed did not conform with the restrictive covenants at issue in that case. *Id.* at 211. Those covenants required that plans for certain improvements be submitted in writing to the community association's architectural committee for pre-approval and only allowed for the type of fence at issue to be constructed on lots without a view. *Id.* at 210–11. The committee approved the plans for the nonconforming fence, and the plaintiffs filed suit against the association and various other parties. *Id.* at 211. The trial court dismissed the plaintiffs' complaint as to the association for failure to state a claim upon which relief could be granted. *Id.* The California Court of Appeals reversed the trial court, concluding:

> Although the Declaration vests "sole discretion" in the Committee and allows for reasonable variances, their decisions must be "in keeping with the general plan for the improvement and development of the Project," and of course, must be made in good faith and not be arbitrary. These are clearly questions of fact for a jury. Accordingly, the Association was a proper defendant in the action below, and dismissing it from the action was error.

*Id.* at 216. The Chamblesses argue that, like in *Cohen*, their Amended Complaint "contains ample allegations to support a finding that the amended covenants are arbitrary and capricious[.]" In making this argument, the Chamblesses essentially ask this Court to adopt the "reasonableness" test expressly rejected by the *Hughes* Court. Furthermore, an important distinction between this case and *Cohen* renders *Cohen* inapplicable here.

To address this distinction, we turn to *Apple II Condo. Ass'n v. Worth Bank and Tr. Co.*, 659 N.E.2d 93 (Ill. App. Ct. 1995), a case cited with approval by our Supreme Court in both *Hughes* and *Pandharipande*. In *Apple II*, a majority of the members of a

condominium association amended their restrictive covenants to limit who could occupy condominiums owned by the association's members. 659 N.E.2d at 95. The association subsequently filed a detainer action to evict nonconforming tenants, and the owners of the unit at issue moved to dismiss the association's complaint. *Id.* at 96. The trial court granted the unit owners' motion; on appeal, the Illinois Appellate Court was tasked with determining whether the adoption of the amended covenant was a valid exercise of the association's power. *Id.* at 97. In discussing the proper level of deference with which to review the association's action, the *Apple II* Court reasoned:

> . . . A higher level of deference is necessary when courts review decisions made by self-governing bodies such as condominium associations. We therefore employ what we conclude is a better-reasoned approach to the problem which was employed by the Florida Appellate Court in *Hidden Harbour Estates, Inc. v. Basso* (Fla. App. 1981), 393 So.2d 637.
>
> In reviewing the merits of the trial court's decision to restrict a unit owners' use of association property, the Florida Appellate Court in *Basso* found that there were "two categories of cases" in which a condominium association attempts to enforce rules of restrictive use. "The first category is that dealing with the validity of restrictions found in the declaration of condominium itself. The second category of cases involves the validity of rules promulgated by the association's board of directors or the refusal of the board of directors to allow a particular use when the board is invested with the power to grant or deny a particular use." *Basso*, 393 So.2d at 639.
>
> The court held that "category one" restrictions are clothed in a very strong presumption of validity and will not be invalidated absent a showing that they are wholly arbitrary in their application, in violation of public policy, or that they abrogate some fundamental constitutional right. The court specifically found that "reasonableness" is not the appropriate test for such restrictions. "Indeed, a use restriction in a declaration of condominium may have a certain degree of unreasonableness to it, and yet withstand attack in the courts. If it were otherwise, a unit owner could not rely on the restrictions found in the declaration of condominium, since such restrictions would be in a potential condition of continuous flux." *Basso*, 393 So.2d at 640.
>
> "Category two" restrictions are treated differently under the *Basso* test. When the discretion of the Board is challenged by a unit owner, the Board must affirmatively show the use it wishes to prohibit or restrict is "antagonistic to the legitimate objectives of the condominium association." (*Basso*, 393 So.2d at 640.) In such cases, courts consider whether the

restriction will promote the health, happiness and peace of mind of the unit owners. *Basso*, 393 So.2d at 640.

*Id.* at 98. It then concluded that the action at issue in *Apple II* was a "category one" restriction because it had been adopted by a majority of the members of the association and was not simply a challenge to a discretionary action of the association's board. *Id.* The instant case, like *Apple II*, *Hughes*, and *Pandharipande*, is a "category one" case challenging an action taken by the association as a whole. Conversely, *Cohen* is a "category two" case challenging an action taken by a committee to whom various discretionary decision making has been delegated. Accordingly, the amended covenants in this case are entitled to a presumption of validity that was not afforded to the defendants' actions in *Cohen*.

The Chamblesses' argument with respect to this issue is essentially that the amended covenants are arbitrary and capricious because, at the time they were adopted, there was personal discord between the Chamblesses and the Rutledges arising from the Rutledges' purported violations of the original covenants. This personal discord and the Rutledges' purported violations of the original covenants are not sufficient grounds for this Court to find that the amended covenants are arbitrary and capricious. Personal discord between neighbors while restrictive covenants are being amended is not unexpected, nor is it unexpected that an association member may seek to amend a covenant with which their lot is nonconforming. *See Hughes*, 387 S.W.3d at 462 (upholding amended covenants adopted specifically to address an ambiguity identified by this Court as part of ongoing litigation between the parties).

The original covenants in this case expressly provided that they could be amended upon agreement of at least 66.66% of the lot owners. There was no specific procedure required by the original covenants for such amendment, and the amended covenants were agreed upon by 75% of the lot owners. Finally, like in *Hughes*, the amended covenants apply uniformly to each of the lots at issue. In short, the record before us does not demonstrate anything arbitrary or capricious about the amended covenants. Therefore, we affirm the trial court's declaration that the amended covenants are valid and enforceable.

*C.*

Next, the Chamblesses argue that the trial court erred in dismissing their declaratory judgment claim against the Maxwells and the Dotys related to Mr. Rutledge's use of association funds, including monies paid by the Chamblesses, the Maxwells, and the Dotys, to hire the Owners' attorney. They premise their argument on Tennessee Code Annotated section 29-14-107(a). That statute applies to declaratory judgment actions and requires that "all persons shall be made parties who have or claim any interest which would be affected by the declaration[.]" Tenn. Code Ann. § 29-14-107(a). Despite this, "[g]enerally,

the trial court has discretion to determine who should be made parties to proceedings for declaratory judgment[.]" *Timmins v. Lindsey*, 310 S.W.3d 834, 839 (Tenn. Ct. App. 2009) (citing *Huntsville Util. Dist. of Scott Cnty., Tenn. v. Gen. Tr. Co.*, 839 S.W.2d 397, 399 (Tenn. Ct. App. 1992)). Absent an abuse of that discretion, the trial court's determination should not be disturbed on appeal. *Id.* "A trial court abuses its discretion when it causes an injustice by applying an incorrect legal standard, reaching an illogical decision, or by resolving the case 'on a clearly erroneous assessment of the evidence.'" *Tenn. Farmers Mut. Ins. Co. v. DeBruce*, 586 S.W.3d 901, 905 (Tenn. 2019) (quoting *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)). "We presume that the trial court's discretionary decision is correct, and we review the evidence in the light most favorable to the trial court's decision." *Id.*

"The non-joinder of necessary parties is fatal on the question of 'justiciability' which, in a suit for a declaratory judgment, is a necessary condition of judicial relief." *Wright v. Nashville Gas & Heating Co.*, 194 S.W.2d 459, 461 (Tenn. 1946). "This does not mean, however, [that] all persons who might be remotely affected need [be] joined." *Shelby Cnty. Bd. of Comm'rs v. Shelby Cnty. Q. Court*, 392 S.W.2d 935, 940 (Tenn. 1965). The Chamblesses contend, but fail to provide sufficient evidence, that the rights of the Maxwells and the Dotys would be affected by the trial court's declaration regarding the use of the association funds to hire the Owners' attorney. Although this issue involves the use of funds paid to the association by the Maxwells and the Dotys, those parties have not challenged Mr. Rutledge's use of those funds to hire the Owners' attorney, nor have they requested a refund of their monies paid to the association.

This portion of the Chamblesses' declaratory judgment claim involves a dispute solely between the Chamblesses and Mr. Rutledge. Thus, we conclude that the trial court did not abuse its discretion in dismissing the Chamblesses' declaratory judgment claim against the Maxwells and the Dotys concerning Mr. Rutledge's use of the association funds.

*D.*

The Maxwells and the Dotys argue that this is a frivolous appeal and request their attorney's fees on appeal. "A frivolous appeal is one that is 'devoid of merit,' or one in which there is little prospect that [an appeal] can ever succeed." *Morton v. Morton*, 182 S.W.3d 821, 838 (Tenn. Ct. App. 2005) (quoting *Indus. Dev. Bd. of the City of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995)). Tennessee Code Annotated section 27-1-122 provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the

appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

In the exercise of our discretion, we decline to find this appeal frivolous and further decline to award the Maxwells and the Dotys their attorney's fees incurred in this appeal.

## IV. Conclusion

For the foregoing reasons, the trial court's dismissal pursuant to Tennessee Rule of Civil Procedure 12.02(6) of the Chamblesses' declaratory judgment action challenging the validity of the amended covenants is vacated. The trial court's award of costs and attorney's fees to the Defendants pursuant to Tennessee Code Annotated § 20-12-119(c) is also vacated to the extent that award is based upon the dismissal of that part of the declaratory judgment action challenging the validity of the amended covenants. In all other respects, the trial court's declaration that the amended covenants are valid and enforceable is affirmed. The trial court's dismissal of the remainder of the declaratory judgment action against the Maxwells and the Dotys is also affirmed. Costs of this appeal are taxed equally between the appellants and the appellees, for which execution may issue if necessary. This case is remanded for proceedings consistent with this Opinion.

_____
KRISTI M. DAVIS, JUDGE